

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-09-203-CV

IN THE INTEREST OF M.M.M., A CHILD

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

In two issues, J.M. (Father) appeals portions of the trial court's order that appointed E.M. (Mother) as the sole managing conservator of their daughter, M.M.M.[1] We affirm.

### Background Facts

On August 4, 2008, two days after M.M.M.'s birth, the Texas Department of Family and Protective Services (the Department) filed a petition

---

[1] To protect the privacy of the parties involved in this appeal, we identify them by initials only. *See* Tex. Fam. Code Ann. § 109.002(d) (Vernon 2008).

for her protection and conservatorship. An affidavit attached to the petition related that Mother had erratic behavior at the hospital before and after giving birth to M.M.M. and that Father did not have stable housing or a well-paying job. The affidavit asserted that Mother's behavior was caused by her refusal to take medication for her apparent mental problems. The trial court initially authorized M.M.M.'s removal from her parents' care and named the Department as M.M.M.'s temporary sole managing conservator.

In September, the Department filed a Family Service Plan that required the parents to (among other things) comply with mental health and medication recommendations and participate in parenting classes and individual counseling. That same month, the trial court ordered the parents to complete these tasks and named them as M.M.M.'s temporary possessory conservators.

The trial court eventually returned M.M.M. to her parents' care. In January 2009, the Department filed another Family Service Plan that contained several other tasks for the parents to complete. In February, the Department filed a motion that requested that temporary possessory conservatorship be removed from Father and remain solely with Mother because Father had been arrested for assaulting Mother. The trial court granted the Department's motion and limited Father's visitation of M.M.M. to occasions agreed to and arranged by the Department.

The trial of M.M.M.'s conservatorship issues occurred in July. Following the trial, the court removed M.M.M.'s conservatorship from the Department and, under the parties' agreement that was announced at trial, appointed Mother as her permanent sole managing conservator and Father as her possessory conservator. The trial court's order allowed Mother to establish M.M.M.'s residence without any geographic restriction and stated that Father "shall have NO unsupervised visits at this time due to his failure to follow the [Department's] service plan, failure to support the child[,] and his history of family violence." The issues of a lack of a geographic restriction on M.M.M.'s residence and of Father's supervised access to her were not part of the parties' agreement; these issues were contested at trial. Father filed his notice of appeal.

## Father's Issues on Appeal

In two issues, Father argues that the trial court erred by not geographically restricting M.M.M.'s domicile and by requiring that his visitation with her be supervised.

**Standard of review**

We review the trial court's decisions on custody, control, possession, and visitation matters for an abuse of discretion. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re M.P.B.*, 257 S.W.3d 804, 811 (Tex.

3

App.—Dallas 2008, no pet.); *In re W.M.*, 172 S.W.3d 718, 724 (Tex. App.—Fort Worth 2005, no pet.) (adding that the trial court has "wide latitude in determining the best interests of a minor child").

To determine whether a trial court abused its discretion, we must decide whether the court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004); *W.M.*, 172 S.W.3d at 725. An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see Low*, 221 S.W.3d at 620.

An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding). Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002); *W.M.*, 172 S.W.3d at 725. We must be cognizant that the trial court is in a better position to decide custody cases because "it faced the parties and their witnesses, observed their demeanor, and had the opportunity

4

to evaluate the claims made by each parent." *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied).

In our review of a child custody ruling under the abuse of discretion standard, legal and factual sufficiency are not independent grounds of error but are relevant factors in deciding whether the trial court abused its discretion. *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g); *see W.M.*, 172 S.W.3d at 725. In determining whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in its application of that discretion. *W.M.*, 172 S.W.3d at 725; *T.D.C.*, 91 S.W.3d at 872. "The traditional sufficiency review comes into play with regard to the first question. With regard to the second question, we determine, based on the elicited evidence, whether the trial court made a reasonable decision." *W.M.*, 172 S.W.3d at 725 (footnote omitted).

**Mother's unrestricted right to determine M.M.M.'s domicile**

In his first issue, Father contends that the trial court erred by failing to restrict M.M.M.'s domicile to a specific geographic area. This issue arises because Mother testified at trial that she wanted to move to California, where she was born and where her parents live.

**The law on residency restrictions**

Texas does not have any specific statute regarding residency restrictions in custody cases. *See Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). However, unless limited by court order, a sole managing conservator, such as Mother, has the exclusive right to designate the primary residence of a child. Tex. Fam. Code Ann. § 153.132(1) (Vernon 2008); *see In re A.S.*, 298 S.W.3d 834, 836 (Tex. App.—Amarillo 2009, no pet.). Also, it is the public policy of this state to assure that a child will have frequent and continuing contact with parents who have shown the ability to act in the child's best interest; to provide a safe, stable, and nonviolent environment for the child; and to encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage. Tex. Fam. Code Ann. § 153.001(a) (Vernon 2008). The best interest of the child is always the primary consideration in resolving issues of conservatorship, possession, and access concerning a child. *Id.* § 153.002 (Vernon 2008); *Lenz*, 79 S.W.3d at 14.

As the Amarillo Court of Appeals recently explained, it is "beyond question" that the desire of a sole managing conservator to move away from Texas may affect the statutory goal of continuing contact with a noncustodial parent. *A.S.*, 298 S.W.3d at 836. However, "[b]ecause the custodial parent provides the child with a basic quality of life, a child's best interest is closely

intertwined with the well-being of the custodial parent." *Lenz*, 79 S.W.3d at 18; *see Echols v. Olivarez*, 85 S.W.3d 475, 476, 482 (Tex. App.—Austin 2002, no pet.) (affirming the trial court's decision to allow a child's mother to move with the child to Tennessee so that she could take a higher paying job and explaining that courts must "primarily concentrate on the general quality of life for both the child and the custodial parent in assessing whether a change is positive and in the child's best interest"); *see also Sanchez v. Sanchez*, No. 04-06-00469-CV, 2007 WL 1888343, at *3–4 (Tex. App.—San Antonio July 3, 2007, pet. denied) (mem. op.) (stating that ordering a residency restriction "is within the trial court's discretion based on the best interest of the child" and holding that the trial court's decision to not impose the restriction requested by the father and to allow the mother to move to Mississippi was not an abuse of discretion), *cert. denied*, 129 S. Ct. 71 (2008).

Father's analysis in his brief solely concerns five factors for geographic restrictions that arise from decisions in other jurisdictions and that were discussed in the *Lenz* opinion: (1) the reasons for and against the move, (2) the effect on extended family relationships, (3) the effect on visitation and communication with the noncustodial parent to maintain a full and continuous relationship with the child, (4) the possibility of a visitation schedule allowing the continuation of a meaningful relationship between the noncustodial parent

7

and the child, and (5) the nature of the child's existing contact with both parents, and the child's age, community ties, and health and educational needs. *See Lenz*, 79 S.W.3d at 15–16. However, the supreme court stated that while these factors (which were not the only factors discussed in the opinion) "may assist [courts] in giving meaning to our best-interest standard in the relocation context," it also indicated that there are no formulaic, bright-line tests in geographic restriction cases. *Id.* at 19.

**Analysis**

The record establishes the turbulent history of Father's and Mother's marriage, which was apparently drawing to an end because Father had filed for divorce at the time of trial. According to Mother, she and Father met in California in 2001. Since that time, Father has been arrested multiple times for assaulting Mother.[2] Specifically, Father's testimony established that he was arrested for throwing a phone at Mother when they were not yet married, that he was arrested in 2007 based on another incident involving Mother, and that he was convicted for an assault that occurred in December 2008, while this case was pending in the trial court. Father said that the 2008 assault occurred

---

[2] Mother said that Father has assaulted her and has been arrested for doing so four or five times.

during an argument about M.M.M. traveling to California and that in the midst of pushing and shoving between him and Mother, he "grabbed her arm."

Father testified that the case arising from his 2007 assault arrest was dismissed. He said that the 2008 assault was precipitated by Mother's throwing a cup of hot noodles on him and that Mother assaulted him on the day before trial by hitting him and scratching him with her nails. Mother said that she did not see Father the day before trial.

Father was sentenced to forty-five days' confinement as his punishment for the December 2008 assault. Although Father and Mother stopped living together after the assault occurred, according to Mother, Father's inappropriate acts toward her were continuing at the time of trial, because during one of Father's visits with M.M.M. about a week before trial, he stole her cell phone and would not return it to her despite her telling him that she needed the phone to call for help if M.M.M. had an emergency.

Father took a battery intervention class while he was in jail for assaulting Mother. However, Mother testified that when Father came to visit M.M.M. about a week before trial and discovered that Mother was dating someone, he

threatened to kill her.[3]  Mother testified that Father's threat caused her desire

to move away "as soon as possible."

Mother testified about the benefits of her proposed move.[4]  She said that

she did not have any support system in Texas and that in California, she could

stay at her mother's home with M.M.M. for a year while she looked for a job.

She said that her mother supports her financially.[5]  She proposed that Father

could visit M.M.M. in California "whenever he wants to" and that Mother could

travel with M.M.M. to see Father in Texas.  She said that she would pay for

trips to Texas so that M.M.M. could see Father but that she would not pay for

Father's trips to California to see M.M.M.

Father said that Mother's parents in California are "very honorable

people."  However, he said that money would be a barrier to his visiting

M.M.M. if she lived in California and that he would not be able to have a

---

[3] Father said that he did not threaten to kill Mother but that he said,
without intending any threat of physical violence, "I don't know what I would
do . . . if I ever found you with another man."

[4] Although Mother planned to move to California, she indicated that she
would not be able to do so until she had more money and received final
approval about the details of the move from her mother.

[5] Mother has not worked since M.M.M.'s birth, but every month, she
receives $800 from her parents and $650 from social security insurance based
on her bipolar disorder.  She also receives food stamps, and Father owes her
$200 per month for child support.

relationship with her if she lived there. Father testified that he has "never stopped seeing [M.M.M.] since she's been born," and he specified that M.M.M. even saw him during the approximately fifteen days that he was in jail because of his assault conviction. Father said that he and his family went to visit M.M.M. just days before trial. Although Mother said that the visit was the first time that Father's father had ever seen M.M.M., she acknowledged that Father's mother and aunt had visited M.M.M. before.

However, some of Father's actions belie his stated desire to remain active in M.M.M.'s life. For instance, although Father said that he had bought M.M.M. some diapers and had given Mother about $1,000 to help with M.M.M.'s care, Mother said that Father had not bought diapers and had not given her money in seven months preceding the trial, and the evidence indicated that he was not likely to support M.M.M. in the near future because he was unemployed. Also, at the time of trial, Father had not successfully completed any of the services from the Department's Family Service Plan. Finally, Mother testified that when she lived with Father, he did not give M.M.M. baths and rarely changed her diapers or gave her bottles because he would "tell [Mother] it's [her] job."

Although some of the evidence that is contained in the record and that is desribed above favors Father's position, the trial court did not abuse its

11

discretion by declining to include a geographic restriction in its order because there is some evidence of substantive and probative character to favor allowing Mother to move with M.M.M. to California. *See Butnaru*, 84 S.W.3d at 211; *W.M.*, 172 S.W.3d at 725. Specifically, if the trial court considered Father's history of assaulting Mother and resolved the conflicting evidence at trial in Mother's favor, including determining that Father had earnestly threatened Mother's life, then we conclude that it acted reasonably by allowing Mother and M.M.M. to move so that they could avoid a violent environment. *See* Tex. Fam. Code Ann. § 153.001(a)(2) (providing that the policy of the State is to provide a safe, nonviolent environment for children); *see also In re Rhodes*, 293 S.W.3d 342, 344 (Tex. App.—Fort Worth 2009, orig. proceeding) (explaining that as "the factfinder, the trial court weighs the evidence and judges a witness's credibility, and the trial court may accept or reject any witness's testimony in whole or in part"); *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no pet.) ("The appellate court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences.").

Next, the trial court could have reasonably concluded that although Father saw M.M.M. regularly, his failure to support M.M.M. financially (if Mother's testimony is true) and his failure to complete any of his service plan showed

12

that he did not have the ability to act in her best interest and that he was therefore not entitled to frequent and continuing contact with her. *See* Tex. Fam. Code Ann. § 153.001(a)(1). The trial court could have also reasonably found that Mother's increased support structure in California would enable her to better provide for M.M.M.'s needs. And although Mother's proposed move to California means that Father and his family might see M.M.M. less than they otherwise would,[6] Mother agreed to travel to Texas at her expense so that M.M.M. could visit them, and the move to California means that M.M.M. can have a greater connection with Mother's parents than she would while living in Texas.

Finally, Father complains that a provision in the trial court's order allows him only to visit M.M.M. "in Texas (so long as [Mother] resides in Texas)" and that the order therefore does not grant him any visitation rights if Mother leaves Texas.[7] But the record on appeal indicates that Mother's move to California is still speculative. If she does move, Father could seek to modify the court's

---

[6] Mother conceded that Father would be able to travel to California only a couple of times a year, but she said that Father could bring his family to California when he visited. None of Father's family testified about their relationship with M.M.M. or their desires related to her.

[7] The order states that Father may visit M.M.M. two Saturdays per month for an hour on each Saturday. Father has not asserted on appeal that the trial court erred in its determination of the frequency or length of his visits with M.M.M.

13

visitation order at that time. Thus, we conclude that the trial court's decision to not geographically restrict M.M.M.'s domicile should not be reversed.

For all of these reasons, we conclude that the trial court did not abuse its discretion by declining to include a geographic restriction on M.M.M.'s domicile, and we overrule Father's first issue.

**The requirement that Father's visitation be supervised**

In his second issue, Father contends that the trial court abused its discretion by ordering that his visitation with M.M.M. must be supervised.

### Section 153.004 of the family code

A trial court "shall consider the commission of family violence in determining whether to deny, restrict, or limit the possession of a child by a parent who is appointed as a possessory conservator." Tex. Fam. Code Ann. § 153.004(c) (Vernon Supp. 2009); *see In re B.N.F.*, 120 S.W.3d 873, 878 (Tex. App.—Fort Worth 2003, no pet.). A court "may not allow" a parent to have access to a child when it is shown that there is a history family violence during the pendency of the suit unless the court

> renders a possession order that is designed to protect the safety and well-being of the child and any other person who has been a victim of family violence committed by the parent and that may include a requirement that:
>
> (A) the periods of access be continuously supervised by an entity or person chosen by the court.

14

Tex. Fam. Code Ann. § 153.004(d)(2)(A); *see In re R.T.H.*, 175 S.W.3d 519, 521 (Tex. App.—Fort Worth 2005, no pet.) (explaining that a single act of violence may constitute a "history" of abuse under section 153.004). It is a "rebuttable presumption that it is not in the best interest of a child for a parent to have unsupervised visitation with the child if credible evidence is presented of a history or pattern of [physical abuse] by that parent directed against the other parent." Tex. Fam. Code Ann. § 153.004(e).

**Analysis**

Beyond creating her desire to move to California, Father's alleged threat to kill Mother and his assaults on her made her concerned about her safety and M.M.M.'s safety if she had to attend Father's visits with M.M.M. If the trial court considered Father's recent assault of Mother and his pattern of assaulting her and believed that Father had seriously threatened Mother's life, we hold that it did not act unreasonably because supervised visitation at a visitation center was one of the trial court's options granted by the legislature under those circumstances. *See* Tex. Fam. Code Ann. § 153.004(d)(2)(A). Evidence unrelated to Father's assaults and threats also supports the trial court's supervision decision—Mother said that Father has threatened to abscond out of state with M.M.M. *See In re Sigmar*, 270 S.W.3d 289, 307 (Tex. App.—Waco 2008, orig. proceeding) (holding that the trial court did not

15

abuse its discretion by ordering supervised visitation as an abduction prevention measure).

Based on these facts and the other facts recited above, we hold that there was some evidence of substantive and probative character for the trial court to find that Father's supervised visitation was in M.M.M.'s best interests, and we therefore overrule Father's second issue. *See* Tex. Fam. Code Ann. §§ 153.002, .004, .193 (Vernon 2008); *Butnaru*, 84 S.W.3d at 211; *W.M.*, 172 S.W.3d at 725.

### Conclusion

Having overruled both of Father's issues, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON, WALKER, and MCCOY, JJ.

DELIVERED:  March 4, 2010

16