NO. 07-10-0055-CV

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL E

 



DECEMBER
16, 2010

 



 

IN THE INTEREST OF M.C.W., A CHILD 

_____________________________

 

FROM THE 140TH DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 2006-536,149; HONORABLE PAULA
LANEHART, PRESIDING

 



 

Memorandum
Opinion

 



 

Before HANCOCK and PIRTLE, JJ., and REAVIS, S.J.[1]

            Appellant Travis Ware appeals from
an order of the trial court modifying the parent-child relationship with his
minor daughter M.C.W. so as to include Gray County, Texas within the geographic
limitation of the primary residence of the child.  He contends the evidence does not support the
trial court’s order and he should have been granted a new trial due to false
testimony of the child’s mother.  We
disagree and affirm the order.  

            




 

Background

            Travis and Tammie Ware were divorced
on December 29, 2006.  One child was born
of the marriage and she was three and a half years old at the time of the
divorce.  By agreement, Tammie and Travis
were named joint managing conservators with Tammie having the right to
designate the primary residence of the child within Lubbock County, Texas.  While M.C.W. resided primarily with Tammie,
she spent a substantial amount of time with Travis as well.  Both Tammie and Travis have been described as
good parents.  The record also contains
evidence that both parents love the child and cooperated with each other in her
care from the time of the divorce until Tammie sought to modify the terms of
the divorce decree to include Gray County so that she could remarry and move to
Pampa, Texas.  At that time, Travis
opposed the move and asked to have the right to designate the child’s primary
residence.  After hearing testimony from
ten witnesses during the four day bench trial, on November 17, 2008, the trial
court ordered that the child’s primary residence should remain in Lubbock
County until she had completed her pre-first grade year at her current school
and that after June 1, 2010, the geographic limitation was modified to include
Gray County. 

            Standard of Review

            We review the trial court’s order in
a suit affecting the parent-child relationship for abuse of discretion.  Gillespie
v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982).  In determining whether the trial court abused
its discretion, we look to see whether 1) the trial court had sufficient
information upon which to exercise its discretion, and 2) the trial court erred
in its application of discretion.  In re M.M.M., 307 S.W.3d 846, 849 (Tex.
App.–Fort Worth 2010, no pet.).  The
traditional sufficiency inquiry applies to the first question.  Id.  When reviewing a no evidence point, we
view the evidence in a light that tends to support the finding and disregard
all evidence and inferences to the contrary. 
Lenz v. Lenz, 79 S.W.3d 10, 13
(Tex. 2002).  We then decide whether there
is more than a scintilla of evidence to support the order.  Id. at
13-14.  In a factual sufficiency review,
we examine all of the evidence.  Plas-Tex, Inc. v. U.S. Steel Corp., 772
S.W.2d 442, 445 (Tex. 1989).  When the
party attacks the factual sufficiency of the evidence,  we set aside the verdict only if the evidence
supporting the finding is so weak as to be clearly wrong and manifestly
unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).   A court does not abuse its discretion if the
decision is based on conflicting evidence as long as there is some evidence of
a substantive and probative character to support the decision.  In re
M.M.M., 307 S.W.3d at 849.  

A trial court may modify an order that
provides the terms and conditions of conservatorship or that relates to
possession of or access to a child if 1) the modification is in the best
interest of the child, and 2) the circumstances of the child, a conservator, or
other party affected by the order have materially and substantially changed since
the date of rendition of the order.  tex. fam. code ann. §156.101(a)(1)(A) (West
Supp. 2010). Here, Travis challenges the trial court’s finding that
modification of the order is in the best interest of the child.  Factors that may be considered in determining
whether a geographic restriction should be lifted include 1) the relationship
with and presence of extended family, 2) the presence of friends, 3) the
presence of a stable and supportive environment, 4) the custodial parent’s
improved financial situation, 5) the positive impact on the custodial parent’s
emotional and mental state with beneficial results to the child, 6) the
noncustodial parent’s right to have regular and meaningful contact with the
child, 7) the ability of the noncustodial parent to relocate, 8) the ability of
the noncustodial parent to adapt his work schedule to the child, and 9) the
health, education, and leisure opportunities available.  Lenz v.
Lenz, 79 S.W.3d at 15-16; In re
Z.N.H., 280 S.W.3d 481, 486-87 (Tex.App.–Eastland 2009, no pet.).  

Application of Law

 Among
other evidence supporting the trial court’s order, the record showed that    1) Tammie wishes to marry a resident of
Gray County, 2) she would not have to work to support herself which would make
her less stressed and more available to involve herself in the child’s school,
her speech therapy, and her after-school activities,[2]
3) the child gets along with Tammie’s fiance’s son, 4) Pampa is approximately
180 miles from Lubbock and Tammie would be willing to meet Travis in Tulia to
facilitate the exercise of his visitation, 5) the child would be able to attend
a small, private school in Pampa (she was attending private school in Lubbock),
6) although Travis has a law practice in Lubbock that would be difficult to
move, he would still be able to keep the child the approximate number of nights
that he has in the past, 7) Tammie has been primarily responsible for obtaining
medical and dental care for the child and the child wants her mother when she
is sick, 8) Tammie’s fiance is currently living in a four bedroom, seven bath
house with 3700 square feet in which M.C.W. would have her own room, 9) the
child has gone to church in Pampa, 10) Tammie’s fiance’s family is close to the
child, 11) Tammie’s fiance gets along with the child and is financially able to
support the family, and 12) Travis has no family in Lubbock and while Tammie
does have some, she is estranged from her mother and sister.  While it may be true that additional evidence
could have been presented as to specific facts regarding the school the child
would attend in Pampa, the extra curricular activities available to her there,
and the medical services including speech therapist available to her there, the
evidence was sufficiently probative to support the order of the trial
court.  

Although there was some evidence of
infidelity committed by both parents, and evidence from which, if  believed, the trial court could have
concluded that both parents had been untruthful,[3]
there was no evidence that this conduct had a detrimental effect on the
child.  There was also evidence that, not
surprisingly, the child had friends in Lubbock and a doctor in Lubbock who had
treated her all of her life.  The parties
also disputed which parent spent the most time with the child.  Additionally, Travis presented testimony from
an expert witness that stability is the most important factor for a child of
that age and that the expert would almost never be in favor of one parent
moving away from the other.[4]   Here, the trial court was required to
perform a balancing of all of the relevant factors, see Lenz v. Lenz, 79 S.W.3d at 17-18, and we cannot say that its
resolution of the same was supported by evidence so weak that it was manifestly
unjust or constituted an abuse of discretion. 
That being so, we overrule the issue.  


Motion for New Trial

Travis next argues that the trial court
erred in not granting his motion for new trial. 
This motion was based on allegedly false testimony provided by Tammie
during trial with respect to her employment. 


To obtain a new trial based on newly
discovered evidence, the party must show 1) that new evidence was discovered
since trial, 2) the failure to discover the evidence prior to trial was not due
to a lack of due diligence, 3) the evidence is not cumulative, and 4) the
evidence is so material it would probably produce a different result.  Waffle
House, Inc. v. Williams, 313 S.W.3d 796, 813 (Tex. 2010).  Whether to grant a new trial is generally
within the discretion of the trial court. Jackson
v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983), overruled in part on other grounds by Moritz v. Preiss, 121 S.W.3d
715 (Tex. 2003).  However, in child
custody cases, it can be error to refuse to grant a motion for new trial even
though the evidence is not newly discovered when there is an extreme case and
the evidence is sufficiently strong.  In re A.G.C., 279 S.W.3d 441, 454 (Tex.App.–Houston
[14th Dist.] 2009,  no
pet.).  

Trial took place in the latter part of
August 2009.[5]  Tammie testified at trial that Travis and
another employee (Tammie’s cousin) had tried to get Tammie fired from her job
at which she was a sales manager for a hospice. 
She denied that she had been warned about her absences from work and
that she was under either investigation, suspension, or probation concerning
her absences.  Tammie added that the
first time she felt her job might be in jeopardy was one week earlier when her
boss informed her that Travis was out to get her.    

            The motion for new trial was filed
December 16, 2009, and the hearing was held January 27, 2010.  Tammie’s supervisor, Julie Collins, testified
that Tammie had requested time off on August 12, 2009 for the next several days
to assist her mother.  While Tammie was
gone, Collins learned that Tammie was in fact at the Gray Wolf Lodge in the
Dallas/Fort Worth area with her fiance.  Collins also testified that Tammie could
never be reached by phone or email and she believed Tammie was spending more
time planning her wedding than working. Collins stated she had never spoken to
Travis or told Tammie that he was out to get her.  After the incident of lying about why she
wanted to take time off, Tammie was fired on August 17.  However, Tammie cried and informed Collins
that she would lose custody of her child if she was fired.  Collins then, in essence, demoted Tammie to
sales representative if Tammie wanted to stay employed.[6]  Tammie was later fired on September 30, 2009
due to discrepancies in expense reports and time records that Tammie had
approved and due to acts by her as a sales representative that were
embarrassing to Collins.  

            Even assuming that this evidence
could not have been discovered prior to trial, the purpose of this evidence was
to impeach the credibility of Tammie. 
Such evidence is generally not the sort that would entitle one to a new
trial.  New Amsterdam Casualty Co. v. Jordan, 359
S.W.2d 864, 866 (Tex. 1962); Rivera v.
Countrywide Home Loans, Inc., 262 S.W.3d 834, 844 (Tex.App.–Dallas
2008, no pet.).  As already
mentioned, there was other evidence before the court contradicting portions of
the testimony of both Tammie and Travis. 
We cannot say that the trial court abused its discretion in determining
that this evidence was not so material as to probably
cause a different result.  

            Accordingly, the order of the trial
court is affirmed.

                                    

                                                                                    Don
H. Reavis

                                                                                    Senior
Justice











[1]Don
H. Reavis, Senior Justice 
(Ret.), sitting by assignment.





[2]Evidence
was presented at the hearing on the motion for new trial that Tammie had lost
her job after the trial.  





[3]The
testimony of both parents was contradicted by testimony from other
witnesses.  





[4]This
opinion was a general one and not directed specifically at the child and
parents involved in this proceeding. 





[5]Tammie’s
testimony with respect to her job performance was on August 25, 2009.  





[6]Tammie
was to request in writing by September 14 that she wished to go back out into
the field as a sales representative or she would be fired.