NO. 07-10-0055-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 16, 2010

IN THE INTEREST OF M.C.W., A CHILD

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-536,149; HONORABLE PAULA LANEHART, PRESIDING

*Memorandum Opinion*

Before HANCOCK and PIRTLE, JJ., and REAVIS, S.J.[1]

Appellant Travis Ware appeals from an order of the trial court modifying the parent-child relationship with his minor daughter M.C.W. so as to include Gray County, Texas within the geographic limitation of the primary residence of the child. He contends the evidence does not support the trial court's order and he should have been granted a new trial due to false testimony of the child's mother. We disagree and affirm the order.

---

[1]Don H. Reavis, Senior Justice (Ret.), sitting by assignment.

*Background*

Travis and Tammie Ware were divorced on December 29, 2006. One child was born of the marriage and she was three and a half years old at the time of the divorce. By agreement, Tammie and Travis were named joint managing conservators with Tammie having the right to designate the primary residence of the child within Lubbock County, Texas. While M.C.W. resided primarily with Tammie, she spent a substantial amount of time with Travis as well. Both Tammie and Travis have been described as good parents. The record also contains evidence that both parents love the child and cooperated with each other in her care from the time of the divorce until Tammie sought to modify the terms of the divorce decree to include Gray County so that she could remarry and move to Pampa, Texas. At that time, Travis opposed the move and asked to have the right to designate the child's primary residence. After hearing testimony from ten witnesses during the four day bench trial, on November 17, 2008, the trial court ordered that the child's primary residence should remain in Lubbock County until she had completed her pre-first grade year at her current school and that after June 1, 2010, the geographic limitation was modified to include Gray County.

*Standard of Review*

We review the trial court's order in a suit affecting the parent-child relationship for abuse of discretion. *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex. 1982). In determining whether the trial court abused its discretion, we look to see whether 1) the trial court had sufficient information upon which to exercise its discretion, and 2) the trial court erred in its application of discretion. *In re M.M.M.,* 307 S.W.3d 846, 849 (Tex. App.–Fort Worth 2010, no pet.). The traditional sufficiency inquiry applies to the first

question. *Id.* When reviewing a no evidence point, we view the evidence in a light that tends to support the finding and disregard all evidence and inferences to the contrary. *Lenz v. Lenz,* 79 S.W.3d 10, 13 (Tex. 2002). We then decide whether there is more than a scintilla of evidence to support the order. *Id.* at 13-14. In a factual sufficiency review, we examine all of the evidence. *Plas-Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989). When the party attacks the factual sufficiency of the evidence, we set aside the verdict only if the evidence supporting the finding is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). A court does not abuse its discretion if the decision is based on conflicting evidence as long as there is some evidence of a substantive and probative character to support the decision. *In re M.M.M.,* 307 S.W.3d at 849.

A trial court may modify an order that provides the terms and conditions of conservatorship or that relates to possession of or access to a child if 1) the modification is in the best interest of the child, and 2) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the date of rendition of the order. TEX. FAM. CODE ANN. §156.101(a)(1)(A) (West Supp. 2010). Here, Travis challenges the trial court's finding that modification of the order is in the best interest of the child. Factors that may be considered in determining whether a geographic restriction should be lifted include 1) the relationship with and presence of extended family, 2) the presence of friends, 3) the presence of a stable and supportive environment, 4) the custodial parent's improved financial situation, 5) the positive impact on the custodial parent's emotional and mental state with beneficial results to the child, 6) the noncustodial parent's right to have

3

regular and meaningful contact with the child, 7) the ability of the noncustodial parent to relocate, 8) the ability of the noncustodial parent to adapt his work schedule to the child, and 9) the health, education, and leisure opportunities available. *Lenz v. Lenz,* 79 S.W.3d at 15-16; *In re Z.N.H.,* 280 S.W.3d 481, 486-87 (Tex.App.–Eastland 2009, no pet.).

*Application of Law*

Among other evidence supporting the trial court's order, the record showed that 1) Tammie wishes to marry a resident of Gray County, 2) she would not have to work to support herself which would make her less stressed and more available to involve herself in the child's school, her speech therapy, and her after-school activities,[2] 3) the child gets along with Tammie's fiance's son, 4) Pampa is approximately 180 miles from Lubbock and Tammie would be willing to meet Travis in Tulia to facilitate the exercise of his visitation, 5) the child would be able to attend a small, private school in Pampa (she was attending private school in Lubbock), 6) although Travis has a law practice in Lubbock that would be difficult to move, he would still be able to keep the child the approximate number of nights that he has in the past, 7) Tammie has been primarily responsible for obtaining medical and dental care for the child and the child wants her mother when she is sick, 8) Tammie's fiance is currently living in a four bedroom, seven bath house with 3700 square feet in which M.C.W. would have her own room, 9) the child has gone to church in Pampa, 10) Tammie's fiance's family is close to the child, 11) Tammie's fiance gets along with the child and is financially able to support the family, and 12) Travis has no family in Lubbock and while Tammie does have some,

---

[2]Evidence was presented at the hearing on the motion for new trial that Tammie had lost her job after the trial.

4

she is estranged from her mother and sister. While it may be true that additional evidence could have been presented as to specific facts regarding the school the child would attend in Pampa, the extra curricular activities available to her there, and the medical services including speech therapist available to her there, the evidence was sufficiently probative to support the order of the trial court.

Although there was some evidence of infidelity committed by both parents, and evidence from which, if believed, the trial court could have concluded that both parents had been untruthful,[3] there was no evidence that this conduct had a detrimental effect on the child. There was also evidence that, not surprisingly, the child had friends in Lubbock and a doctor in Lubbock who had treated her all of her life. The parties also disputed which parent spent the most time with the child. Additionally, Travis presented testimony from an expert witness that stability is the most important factor for a child of that age and that the expert would almost never be in favor of one parent moving away from the other.[4] Here, the trial court was required to perform a balancing of all of the relevant factors, *see Lenz v. Lenz,* 79 S.W.3d at 17-18, and we cannot say that its resolution of the same was supported by evidence so weak that it was manifestly unjust or constituted an abuse of discretion. That being so, we overrule the issue.

*Motion for New Trial*

Travis next argues that the trial court erred in not granting his motion for new trial. This motion was based on allegedly false testimony provided by Tammie during trial with respect to her employment.

---

[3]The testimony of both parents was contradicted by testimony from other witnesses.

[4]This opinion was a general one and not directed specifically at the child and parents involved in this proceeding.

5

To obtain a new trial based on newly discovered evidence, the party must show 1) that new evidence was discovered since trial, 2) the failure to discover the evidence prior to trial was not due to a lack of due diligence, 3) the evidence is not cumulative, and 4) the evidence is so material it would probably produce a different result. *Waffle House, Inc. v. Williams,* 313 S.W.3d 796, 813 (Tex. 2010). Whether to grant a new trial is generally within the discretion of the trial court. *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex. 1983), *overruled in part on other grounds by Moritz v. Preiss,* 121 S.W.3d 715 (Tex. 2003). However, in child custody cases, it can be error to refuse to grant a motion for new trial even though the evidence is not newly discovered when there is an extreme case and the evidence is sufficiently strong. *In re A.G.C.,* 279 S.W.3d 441, 454 (Tex.App.–Houston [14th Dist.] 2009, no pet.).

Trial took place in the latter part of August 2009.[5] Tammie testified at trial that Travis and another employee (Tammie's cousin) had tried to get Tammie fired from her job at which she was a sales manager for a hospice. She denied that she had been warned about her absences from work and that she was under either investigation, suspension, or probation concerning her absences. Tammie added that the first time she felt her job might be in jeopardy was one week earlier when her boss informed her that Travis was out to get her.

The motion for new trial was filed December 16, 2009, and the hearing was held January 27, 2010. Tammie's supervisor, Julie Collins, testified that Tammie had requested time off on August 12, 2009 for the next several days to assist her mother. While Tammie was gone, Collins learned that Tammie was in fact at the Gray Wolf

---

[5]Tammie's testimony with respect to her job performance was on August 25, 2009.

Lodge in the Dallas/Fort Worth area with her fiance. Collins also testified that Tammie could never be reached by phone or email and she believed Tammie was spending more time planning her wedding than working. Collins stated she had never spoken to Travis or told Tammie that he was out to get her. After the incident of lying about why she wanted to take time off, Tammie was fired on August 17. However, Tammie cried and informed Collins that she would lose custody of her child if she was fired. Collins then, in essence, demoted Tammie to sales representative if Tammie wanted to stay employed.[6] Tammie was later fired on September 30, 2009 due to discrepancies in expense reports and time records that Tammie had approved and due to acts by her as a sales representative that were embarrassing to Collins.

Even assuming that this evidence could not have been discovered prior to trial, the purpose of this evidence was to impeach the credibility of Tammie. Such evidence is generally not the sort that would entitle one to a new trial. *New Amsterdam Casualty Co. v. Jordan,* 359 S.W.2d 864, 866 (Tex. 1962); *Rivera v. Countrywide Home Loans, Inc.,* 262 S.W.3d 834, 844 (Tex.App.–Dallas 2008, no pet.). As already mentioned, there was other evidence before the court contradicting portions of the testimony of both Tammie and Travis. We cannot say that the trial court abused its discretion in determining that this evidence was not so material as to probably cause a different result.

Accordingly, the order of the trial court is affirmed.

Don H. Reavis
Senior Justice

---

[6]Tammie was to request in writing by September 14 that she wished to go back out into the field as a sales representative or she would be fired.

7