**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00429-CV**
_____

**IN THE INTEREST OF R.H.C.**

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 12-10-10690-CV**

**MEMORANDUM OPINION**

In this post-divorce modification suit affecting the parent-child relationship, R.H.C.'s father, S.D.C., appeals the trial court's final order appointing the child's mother, T.D., as the managing conservator with the exclusive right to designate the primary residence of R.H.C., their minor child. In one issue on appeal, S.D.C. argues that the trial court abused its discretion by ordering a change in the primary conservatorship of R.H.C. based solely on S.D.C. having violated a previously imposed geographic restriction due to a lack of employment opportunities. We affirm the trial court's judgment.

## Background

In December 2010, S.D.C. and T.D. divorced. In the Final Decree of Divorce, the trial court appointed S.D.C. and T.D. as joint managing conservators of R.H.C. The trial court further ordered that S.D.C. had the "exclusive right to designate the primary residence of the child within Walker and Montgomery Counties when the child reaches the age of five (5) years and begins Kindergarten[.]"

In 2013, S.D.C. filed a petition to modify the parent-child relationship, asking the trial court to modify the terms and conditions for possession and access of the child and to increase child support payments. In 2014, the trial court entered an order modifying the parent-child relationship, ordering that S.D.C. "shall have the exclusive right to designate the child's primary residence within Montgomery and Contiguous Counties." The trial court further ordered that the "geographic restriction on the residence of the child shall be lifted if, at the time [S.D.C.] wishes to remove the child from Montgomery and Contiguous Counties for the purpose of changing the primary residence of the child, [T.D.] does not reside in Montgomery and Contiguous Counties." The trial court also found that it was in the best interest of the child to deviate from the Standard Possession Order in the Texas Family Code. The trial court found that standard possession was unworkable

2

and inappropriate under the circumstances because T.D. was employed as a paramedic and "works 24-hour shifts, beginning and ending at 7:00 a.m., with varying hours off in between shifts[,]" and that "due to her work schedule, [T.D.] is unable to exercise predictable periods of possession occurring on the same days of each month."

In January 2015, S.D.C. filed another petition to modify the parent-child relationship, contending that the "circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the order to be modified." In his petition, S.D.C. requested that the trial court lift the previously imposed geographic restriction. S.D.C.'s petition included a supporting affidavit, stating that he had already moved R.H.C.'s residence outside of the geographic restricted area for the purpose of employment, that R.H.C. was attending a new school, and that he believed R.H.C. will continue to have frequent contact with T.D. despite living more than one hundred miles apart. T.D. filed a counter-petition to modify the parent-child relationship, also contending that the circumstances of the child or a conservator had materially and substantially changed and asking that the trial court appoint her as the conservator who has the right to establish the primary residence of the child. In her counter-petition, T.D. asserted that S.D.C. has a history of

3

neglecting R.H.C. and that S.D.C.'s change of residence has caused her to incur increased costs to exercise her periods of possession.

The trial court conducted a trial on the merits of the parties' petitions. S.D.C. testified that it was in R.H.C.'s best interest for the trial court to remove the geographic restriction because S.D.C. had to move outside the designated geographical area to secure employment. The record shows that S.D.C. and R.H.C. moved prior to S.D.C. filing his petition to lift the geographic restriction. S.D.C. testified that the move has improved his financial situation and his lifestyle, allowing him to spend more time with R.H.C. S.D.C. claimed that despite having moved, he continues to insure that T.D. has access to R.H.C. and that she was able to visit R.H.C. twice at school. According to S.D.C., the parties' possession and access schedule works because T.D. has access to R.H.C. every other weekend and the parties meet halfway between their residences. S.D.C. maintained that due to his move, R.H.C. has access to a better school. According to S.D.C., R.H.C. is doing well in her new school and her functionality has improved since transferring schools.

S.D.C. also claimed that his relocation allows R.H.C. to spend more time with extended family. S.D.C. testified that since his move, he has established a stable home with a regular routine. According to S.D.C., R.H.C. is in the best

4

environment she could be in, because in T.D.'s home, R.H.C. is exposed to a constant influx of ex-boyfriends. S.D.C. also testified that T.D. still works "crazy" hours and is not at home every night. However, S.D.C. also has to work one to two nights per week and does not get home until around ten o'clock.

T.D., who is a licensed paramedic and a registered nurse, testified concerning her work schedule and explained that her work schedule had recently changed. T.D. testified that she previously worked twenty-four hour shifts approximately ten days per month and that the shift started and ended at seven o'clock in the morning, but T.D. currently works twelve-hour shifts approximately fifteen days per month. While T.D. is under contract with an additional employer to work a minimum of four additional shifts per month, she testified that she would quit her additional job if the trial court awarded her primary custody of R.H.C. According to T.D., her new work schedule significantly impacts her ability to care for R.H.C. because she gets off work at five o'clock in the afternoon and is able to cook dinner, help R.H.C. with homework, and establish a bedtime routine. T.D. also explained that her workday begins at five o'clock in the morning, and that her older daughter will care for R.H.C. on the mornings T.D. is working and will take R.H.C. to school. T.D. explained that if her daughter is unable to care for R.H.C.

5

due to conflicts with her college schedule, T.D. has other friends or providers who can help care for R.H.C.

T.D. alleges that S.D.C. has a history of neglecting R.H.C. T.D. testified that she has concerns because when R.H.C. is under S.D.C.'s care, R.H.C.'s hair is unkempt and knotted and R.H.C. wears inappropriate-sized clothing. However, on cross-examination, T.D. conceded that when she received R.H.C with matted hair, T.D. was picking R.H.C. up from school or daycare, and T.D. had no evidence showing that R.H.C. had left S.D.C.'s care in that condition. Regarding R.H.C.'s clothing, T.D. admitted that she did not help S.D.C. with R.H.C.'s school clothes, and although S.D.C. has been R.H.C.'s primary conservator since R.H.C. was fourteen months old, T.D. did not provide any child support until shortly before R.H.C. turned six years old.

T.D. also expressed concerns about R.H.C.'s diet, the irregularity of her bowel movements, and R.H.C. having had a diaper rash and blistering in her genital area. According to T.D., R.H.C. also has a history of having pin worms. T.D. further testified that she was concerned about R.H.C.'s emotional well-being because R.H.C.'s demeanor had changed since the move. According to T.D., R.H.C. is not herself, and is very clingy, sad, withdrawn, and introverted. T.D. claimed that R.H.C. resists getting in the car when it is time for her to return to

6

S.D.C.'s home. T.D. believes that R.H.C. needs counseling and is willing to pay for it, but according to T.D., S.D.C. will not agree to enroll R.H.C. in therapy. Since S.D.C.'s move, T.D. maintains that they have tried to work together to accommodate each other as much as possible concerning possession and access, but logistics sometimes prevented T.D. from exercising possession of R.H.C. T.D. testified that she believes R.H.C. would be better off living with her, and T.D. asked the trial court to appoint her as the primary conservator with the right to designate R.H.C.'s primary residence with a geographic restriction.

The trial court also heard testimony from T.D.'s boyfriend, daughter, and friend. T.D.'s boyfriend, K.A., testified that he and T.D. live together and have been together a little over a year. K.A. testified that if R.H.C. lived with T.D., he would assist in caring for R.H.C. According to K.A., their home is safe and clean. K.A. is aware that R.H.C. has allergy problems and claims that both he and T.D. do not smoke inside the home. T.D.'s daughter testified that she has assisted in caring for R.H.C. in the past and will continue to do so when needed. T.D.'s friend testified that R.H.C.'s demeanor has changed since the move, and she explained that R.H.C. is withdrawn, subdued, and more physically attached to T.D.

At the end of the trial, the trial judge questioned S.D.C. regarding T.D.'s relationship with R.H.C., and S.D.C. admitted that T.D. had a close relationship

7

with R.H.C. The trial judge also questioned S.D.C. about the impact of moving R.H.C. 250 miles away from T.D. and about the difficulty of T.D. being able to attend school functions and other activities on a regular basis. S.D.C. admitted that R.H.C. wanted T.D. to attend such events, but he did not think the distance posed any problem for T.D. At the end of the trial, the trial judge stated that the case involved a very difficult decision and expressed concerns about R.H.C.'s emotional well-being regardless of her ruling because, either way, R.H.C. cannot see both parents on a daily basis.

The trial court denied S.D.C.'s petition to modify the parent-child relationship in its entirety and granted T.D.'s counter-petition in part. The trial court ordered that S.D.C. and T.D. be appointed joint managing conservators of R.H.C. and that T.D. shall have the exclusive right to designate the primary residence of the child within Montgomery County and contiguous counties. S.D.C. filed a motion for new trial. The trial court held a hearing on S.D.C.'s motion for new trial and denied the motion.

In its findings of facts, the trial court found "that circumstances of the child and a conservator have materially and substantially changed since the rendition of the order to be modified." The trial court found that in December 2013, the Court rendered an order awarding S.D.C. the exclusive right to designate the primary

residence of the child restricted to Montgomery County, and since rendition of that order, S.D.C. and the child have been residing in Denton County. The trial court further found that it was in the best interest of the child that S.D.C. and T.D. remain joint managing conservators and that T.D. have the exclusive right to designate the child's residence, restricted to Montgomery County and contiguous counties. S.D.C. appeals the trial court's order modifying the parent-child relationship.

## Analysis

In his sole issue on appeal, S.D.C. argues that the trial court abused its discretion by ordering a change in the primary custody of R.H.C. According to S.D.C., the trial court's decision was based solely on S.D.C. having violated the previously imposed geographic restriction. S.D.C. argues that there is no current precedent or Texas statute that allows a trial court to change a parent's right to establish the primary residence of a child based solely on the fact that the parent violated a court order by relocating the child. S.D.C. does not challenge the trial court's finding of a material and substantial change in circumstances; rather, S.D.C. challenges whether the evidence supports the trial court's finding that the modification is in the child's best interest.

According to T.D., the record does not support S.D.C.'s contention that the trial court based its findings solely upon S.D.C. having violated the geographic restriction. Instead, the record shows that the trial court found that the circumstances of the child and a conservator had materially and substantially changed since the rendition of the order to be modified. T.D. maintains that the trial court heard substantial testimony regarding the care of R.H.C. while in S.D.C.'s possession and that the evidence was sufficient to show that it was in R.H.C.'s best interest for T.D. to be awarded primary conservatorship.

We review a trial court's decision in a case concerning a modification of conservatorship under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re M.A.M.*, 346 S.W.3d 10, 13 (Tex. App.—Dallas 2011, pet. denied). "The trial court is given wide latitude in determining the best interests of a minor child." *Gillespie*, 644 S.W.2d at 451. A trial court abuses its discretion when it acts arbitrarily or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *M.A.M.*, 346 S.W.3d at 13. "The question of conservatorship of a child is left to the sound discretion of the trial court when it sits as trier of fact." *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, not pet.). Because the trial court is in the best position to observe the demeanor of the witnesses and can

"'feel' the forces, powers, and influences that cannot be discerned by merely reading the record[,]" we will not find an abuse of discretion as long as there is some evidence of substantive and probative character to support the trial court's decision. *Id.*

In family law cases, the traditional sufficiency standard of review overlaps with the abuse of discretion standard; thus, legal and factual sufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *M.A.M.*, 346 S.W.3d at 13. This standard has been distilled into a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Id.* at 14. The traditional sufficiency review is relevant with regard to determining whether the trial court had sufficient evidence to exercise its discretion. *Id.*; *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, pet. denied). The second part of the inquiry requires that we determine whether the trial court made a reasonable decision considering the evidence presented. *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.).

Section 156.101 of the Texas Family Code provides that a trial court may modify an order in a suit affecting the parent-child relationship when the

circumstances of the child or one or both of the conservators have materially and substantially changed since the date of the rendition of the prior order, and if modification would be in the best interest of the child. *See* Tex. Fam. Code Ann. § 156.101(a)(1)(A) (West 2014). "In reviewing determinations regarding modifications of residency restrictions to permit a custodial parent's relocation, we look to the public policy the legislature has set forth in the family code for custody issues and the guidelines from that policy." *In re Cooper*, 333 S.W.3d 656, 660 (Tex. App.—Dallas 2009, orig. proceeding); *see Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). Texas's public policy calls for frequent and continuing contact with parents when both parents are able to act in the child's best interest; providing the child with a safe, stable, nonviolent environment; and encouraging divorced parents to share in the raising of the child. Tex. Fam. Code Ann. § 153.001 (West 2014); *Cooper*, 333 S.W.3d at 660.

The child's best interest is the trial court's primary concern in determining issues of conservatorship, possession, and access. Tex. Fam. Code Ann. § 153.002 (West 2014). In analyzing the best-interest standard in the relocation context, we are guided by the Legislature's public policy considerations and by best-interest tests developed by courts. *Lenz*, 79 S.W.3d at 18-19. We assess the trial court's best-interest finding by using the *Holley* factors. *See Holley v. Adams*, 544 S.W.2d

367, 371-72 (Tex. 1976). The *Holley* factors include the (1) child's desires; (2) the child's current and future physical and emotional needs; (3) any physical or emotional danger to the child in the present or future; (4) the parental abilities of the individuals involved; (5) the programs available to those individuals to promote the child's best interest; (6) the plans for the child by these individuals; (7) the stability of the home; (8) acts or omissions by a parent tending to show that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Id.*

Additionally, because this modification involves residency restrictions and relocation, we must also consider the factors identified by the Supreme Court of Texas in *Lenz. See Lenz*, 79 S.W.3d at 14. The *Lenz* court identified the following factors as being potentially relevant in determining the child's best interest after relocation: (1) the reasons for and against the move; (2) the relocation's effect on a child's education, health, and leisure opportunities; (3) accommodating any special needs or talents; (5) the effect on extended family relationships; (6) how the move will affect the noncustodial parent's visitation and communication with the child; and (7) the noncustodial parent's ability to relocate. *Lenz*, 79 S.W.3d at 15-16.

The trial court heard conflicting evidence regarding the relevant factors that concerned the child's best interest with respect to conservatorship, possession, and

13

access. *See Holley*, 544 S.W.2d at 371-72. S.D.C. testified that while living with him, R.H.C. experienced a better education, a stable home, and a regular routine. S.D.C. claimed that R.H.C. was able to spend more time with him and extended family, and unlike T.D.'s house, R.H.C. was not exposed to ex-boyfriends coming and going in the home. S.D.C. also testified that she insured that T.D. had access to R.H.C. and was able to visit R.H.C.'s school.

T.D. testified that her new work schedule gave her the ability to care for R.H.C. full time. T.D. claimed that it was in R.H.C.'s best interest to live with her because S.D.C. had been neglecting R.H.C.'s care. T.D. expressed concerns about R.H.C.'s hygiene, diet, and her physical and emotional health. According to T.D., she wanted to enroll R.H.C. in counseling to help R.H.C. deal with her emotional issues, but S.D.C. had refused.

The trial court also heard evidence concerning the relevant factors in determining R.H.C.'s best interest after relocation. *See Lenz*, 79 S.W.3d at 15-16. S.D.C. testified about how his relocation had affected R.H.C. According to S.D.C., the move had improved R.H.C.'s lifestyle and financial situation. S.D.C. claimed that R.H.C. had improved in school and benefitted from being able to spend more time with S.D.C. and other extended family members. However, T.D. testified that R.H.C.'s demeanor had changed since the move, and she described R.H.C. as

14

being very clingy, sad, and withdrawn. T.D. further testified that the move has sometimes prevented her from exercising possession of R.H.C.

After hearing all of the evidence and observing the witnesses, the trial court also expressed concerns about R.H.C.'s emotional well-being due to S.D.C. having moved R.H.C. 250 miles away from T.D. *See Echols,* 85 S.W.3d at 477. The record shows that the trial judge questioned S.D.C. about the impact the relocation has had on R.H.C.'s relationship with T.D., and while S.D.C. admitted that R.H.C. was close to T.D. and wanted T.D. to attend school functions and other events, S.D.C. did not think that the distance posed any problem.

The trial court found that it was in R.H.C.'s best interest that S.D.C. and T.D. remain joint managing conservators and that T.D. have the exclusive right to designate the child's residence, restricted to Montgomery County and contiguous counties. Based on the evidence concerning all relevant factors at the time of the hearing, we hold that there is some evidence of substantive and probative character to support the trial court's decision. *See id.* We further conclude that the trial court made a reasonable decision considering the evidence presented. *See M.M.M.*, 307 S.W.3d at 849. Accordingly, we hold that the trial court did not abuse its discretion by ordering the modification. *See Gillespie*, 644 S.W.2d at 451. We overrule S.D.C.'s sole issue and affirm the trial court's judgment.

15

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on August 2, 2016
Opinion Delivered October 20, 2016

Before McKeithen, C.J., Kreger and Johnson, JJ.