

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-08-00145-CV

_____

### IN THE INTEREST OF
### M.T.C. and D.L.C., JR., MINOR CHILDREN

On Appeal from the 6th Judicial District Court
Red River County, Texas
Trial Court No. CV-01534

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

This case is about what rights the various parties will have regarding two minor children, Mary and Dan.[1] The parties include Shannon Coyel, the children's mother; Jerry Coyel, their stepfather;[2] Bill Woods, their maternal grandfather; and Sharla Woods, their step-grandmother. The trial court has held many hearings to sort out the various issues raised by the parties. After the numerous hearings, the trial court denied relief to the Woodses and named Jerry and Shannon joint managing conservators.

On appeal, the Woodses assert abuses of discretion by the trial court in denying the Woodses' jury demand, denying the Woodses' request to be named joint managing conservators, and denying Bill Woods grandparental access to the children.

We modify the trial court's judgment, and affirm it as modified, because (1) the jury request was untimely, (2) Sharla Woods lacked standing to seek conservatorship or access and possession, (3) the trial court did not abuse its discretion in denying Bill Woods' requests to be named joint managing conservator and to have access to the children.

*Factual Background*

About June 19, 2007, Shannon left Jerry and moved to Colorado. She took Dan with her, but left Mary with Jerry. In July of 2007, Jerry filed for and received temporary sole managing

_____

[1]In this case, rather than using the often confusing initials M.T.C. and D.L.C. Jr., we will refer to the children as "Mary" and "Dan," respectively.

[2]Mary and Dan's biological father died in 1997.

2

conservatorship of Mary. On August 11, 2007, Bill and Sharla Woods, Shannon's father and stepmother, petitioned to intervene in Jerry's action and sought custody of and access to Mary and Dan. After Shannon returned from Colorado with Dan, Jerry amended his petition for custody to acknowledge that he and Shannon were, or would soon be, separated and to request that he and Shannon be appointed joint managing conservators of Mary and Dan.

Several hearings were held in this matter. In the first hearing, September 10, 2007, the trial court entered an agreed order naming Jerry and Shannon joint managing conservators of both children. During the next hearing, held October 11–12, 2007, the court held that the Woodses had standing to intervene, and then heard evidence on the merits of both the Woodses' petition and Jerry's amended petition. More than twenty witnesses testified over the two-day period. Each side accused the other of being unfit for conservatorship. The Woodses alleged that Jerry used drugs, sexually abused Mary, and emotionally abused Dan. The Woodses also accused Shannon of criminal activity, drug use, parental negligence, and abandonment. In turn, the Coyels argued that the Woodses lacked standing to intervene, and Shannon alleged that Bill Woods abused Shannon and knowingly allowed his family to sexually abuse Shannon when she was a child in their home. The court entered an order appointing an attorney ad litem for the children, ordering counseling for the children, and naming Bill Woods, Jerry Coyel, and Shannon Coyel temporary joint managing conservators.

3

At the request of the children's attorney, a third hearing was held in February 2008, regarding issues of counseling for the children. Five months thereafter, in July 2008, the Woodses filed a demand for jury trial, which the Coyels argued was untimely.

In December 2008, the trial court granted Bill Woods access to the children until May 4, 2009,[3] and thereafter at such dates and times as mutually agreed upon by Bill Woods and Shannon Coyel. The court's order denying relief[4] to the Woodses also named Jerry and Shannon joint managing conservators.

*(1)     The Jury Request Was Untimely*

Trial was held October 11–12, 2007, and all parties submitted witnesses and evidence on the merits. Nine months later, the Woodses filed a demand for jury trial, and the trial court held it was untimely. The Woodses argue that the trial court abused its discretion in denying their jury demand. We disagree.

We review a trial court's denial of a jury demand for an abuse of discretion. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996); *In re T.H.*, 131 S.W.3d 598, 601 (Tex. App.—Texarkana 2004, pet. denied). In conducting an abuse of discretion review, we examine the

---

[3]The visitation was to be at such times and places as the counselor, Ronikaye Rusak, deemed appropriate.

[4]The initial order denying relief in a suit affecting the parent-child relationship (SAPCR) was filed December 5, 2008; but a corrected order denying relief was filed December 15, 2008. When this opinion refers to the "order denying relief," we refer to the corrected order. The order denied "all other relief sought by Intervenors Bill P. Woods and Sharla Woods."

4

entire record. *Mercedes-Benz Credit Corp.*, 925 S.W.2d at 666. We will find an abuse of discretion only when the trial court's decision is arbitrary, unreasonable, and without reference to guiding principles. *Id.* "A refusal to grant a jury trial is harmless error only if the record shows that no material issues of fact exist and an instructed verdict would have been justified." *Halsell v. Dehoyos*, 810 S.W.2d 371, 372 (Tex. 1991).

Parties in a family law case have the right to demand a jury trial regarding conservatorship. TEX. FAM. CODE ANN. § 105.002(a), (c) (Vernon Supp. 2009); *In re A.S.*, 241 S.W.3d 661, 666 (Tex. App.—Texarkana 2007, no pet.). The Texas Rules of Civil Procedure provide that "[n]o jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance." TEX. R. CIV. P. 216; *T.H.*, 131 S.W.3d at 601.

Once a nonjury trial has commenced, a party is no longer entitled to a jury trial. *See T.H.*, 241 S.W.3d at 601–02. Denying a jury demand made after the record is opened and evidence is received is not an abuse of discretion despite a trial court granting subsequent continuances and holding further hearings on the matter. *See O'Connor v. O'Connor*, 245 S.W.3d 511, 516–17 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

The Woodses' petition to intervene was first filed September 11, 2007. After an initial hearing in September 2007,[5] and the entry of temporary orders, the trial court granted the Woodses

[5]The record reflects that the September hearing was to identify the parties and determine the issues in dispute.

permission to intervene "for a hearing on all issues regarding their Petition" and held that "a final hearing shall be held on October 18, 2007." The contemplated hearing actually occurred October 11–12, 2007.[6] On October 11, the trial court's docket sheet notes, "All present - Evid on Merits." On the next day, it notes, "All Present Evid Cont's; all rest; under submission." Evidence was admitted and more than twenty witnesses testified during the two-day proceeding.[7] When all parties rested, the trial court held that "[t]he evidence is complete," that it would take "this matter under consideration," and that it would reopen the evidence if the ad litem so requested. In July 2008, nine months after the hearing in October, the Woodses filed their demand for jury trial.

Here, the order denying relief states that "[e]vidence was concluded on October 12, 2007," and "[e]vents subsequent to [October 12, 2007] may serve as basis for future litigation." The order indicates that it is based on the evidence produced at the hearings in September and October, and that the order does not take subsequent proceedings or evidence into consideration. The Woodses failed to request a jury prior to the October hearing even though all parties had notice that a "final hearing" was to occur in October. Because the Woodses demanded a jury after the merits of the case were heard, their demand was untimely. We overrule this point of error.

---

[6]The record is unclear as to why the final hearing was moved from October 18 to October 11–12.

[7]The evidence introduced during the October hearing dates was on the merits of the conservatorship and access issues and not "explicitly for the purpose of allowing the Woods[es] a full hearing on their intervention request" as alleged by the Woodses.

*(2)    Sharla Woods Lacked Standing to Seek Conservatorship or Access and Possession*

Bill Woods and Sharla Woods intervened in the Coyels' action and sought conservatorship and access to the children. The Coyels argued that Sharla lacked standing to intervene for any purpose. During the October hearings, the trial court heard evidence both on the Woodses' standing and on the merits of their requests. Though the trial court held that Sharla lacked standing to seek "possession of and access to the children," nothing in this record contains any decision by the trial court whether Sharla Woods had standing to seek conservatorship.[8] On appeal, the Woodses argue that the trial court erred in finding that Sharla lacked standing to seek conservatorship. We disagree and find that Sharla had standing to pursue neither conservatorship nor access.

The best interest of the child is always the primary consideration in determining issues of conservatorship, access, and possession. TEX. FAM. CODE ANN. § 153.002 (Vernon 2008). Because the trial court is in a position to analyze the facts, with regard to issues of conservatorship, control, possession, child support, and visitation, the trial court is given "wide latitude in determining the best interests of a minor child." *Stallworth v. Stallworth*, 201 S.W.3d 338, 347 (Tex. App.—Dallas 2006, no pet.) (quoting *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)); *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App—Austin 2005, pet. denied). We are without power to reverse the trial court's order unless it appears from the record as a whole that the trial court abused its discretion. *In re*

---

[8]The court's finding that Sharla lacked standing to pursue "possession of and access to the children" matches the "visitation" language of Section 153.433 of the Texas Family Code, rather than the conservatorship language of Section 102.004. *See* TEX. FAM. CODE ANN. § 153.433 (Vernon Supp. 2009), § 102.004 (Vernon 2008).

*Marriage of Edwards*, 79 S.W.3d 88, 98 (Tex. App.—Texarkana 2002, no pet.); *Halamka v. Halamka*, 799 S.W.2d 351, 355 (Tex. App.—Texarkana 1990, no writ).

A trial court does not abuse its discretion if some evidence of substantive and probative character exists to support the trial court's decision. *In re J.P.C.*, 261 S.W.3d 334, 336 (Tex. App.—Fort Worth 2008, no pet.). Because a trial court has no discretion in determining what the law is or applying the law to the facts, however, discretion is abused when a court grants conservatorship or access to a grandparent who fails to meet the statutory requirements of Section 153.433. *See id.*; *In re B.N.S.*, 247 S.W.3d 807, 808 (Tex. App.—Dallas 2008, no pet.).

We review the trial court's determination of a party's standing to file a SAPCR by construing the pleadings in favor of the petitioner and looking to the pleader's intent. *See In re SSJ-J*, 153 S.W.3d 132, 134 (Tex. App.—San Antonio 2004, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We review de novo the issue about standing. *Id*.

Standing is implicit in the concept of subject matter jurisdiction; as such, it is never presumed and cannot be conferred by waiver or estoppel. *Tex. Ass'n of Bus.*, 852 S.W.2d at 445–46; *In re H.G.*, 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, no pet.). Thus, standing may be raised for the first time on appeal, even by a court acting sua sponte. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 445–46.

In Texas, a party's standing in a SAPCR is governed by the Texas Family Code, and a party seeking relief in such suits must plead and establish standing within the parameters of the language

8

used in the Code. *See H.G.*, 267 S.W.3d at 124; *see also* TEX. FAM. CODE ANN. §§ 102.003–.007 (Vernon 2008 & Supp. 2009). If a party fails to do so, the trial court must dismiss the suit. *See In re C.M.C.*, 192 S.W.3d 866, 870 (Tex. App.—Texarkana 2006, no pet.).

Sharla is not a biological or adoptive grandparent of the children in this case; but, regardless of that fact, for her to have the right to intervene, it must be shown that she has "had substantial past contact" with the children. TEX. FAM. CODE ANN. § 102.004(b). What constitutes "substantial past contact" is not statutorily defined, and our search of the caselaw has not revealed any formal caselaw definition. *C.M.C.*, 192 S.W.3d at 871. Because of the language of the controlling statute, however, our inquiry should focus on the amount of actual contact which occurred rather than the difficulties encountered in maintaining contact. *Id*.

Neither Mary nor Dan have ever been to the Woodses' home in Kansas. Sharla testified that she saw the children only "about twice a year" and that Bill usually spoke on the telephone with either Shannon or the children "about once a week." Shannon conceded that Bill and Sharla would mail the children cards and gifts on holidays, but she also testified that, over the preceding decade, the Woodses had seen the children for a total of only three weeks.

"Substantial" is defined generally as "of ample or considerable amount, quantity, size, etc." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1897 (2nd ed. 1987); *see C.M.C.*, 192 S.W.3d at 872. Even accepting the Woodses' testimony regarding contact with the children as true, the evidence does not raise a fact issue on substantial past contact. Texas cases in which substantial

past contact has been found have involved incomparably more contact than the contact in this case. *See, e.g.*, *Chavez v. Chavez*, 148 S.W.3d 449, 456 (Tex. App.—El Paso 2004, no pet.) (standing to intervene when children had resided with grandparents for over a year); *In re A.M.*, 60 S.W.3d 166, 168 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (standing when seventeen-month-old child had resided with foster parents for fourteen months); *In re M.T.*, 21 S.W.3d 925, 926 (Tex. App.—Beaumont 2000, no pet.) (standing to intervene when children had resided with foster parents for fourteen months); *In re Hidalgo*, 938 S.W.2d 492, 495–96 (Tex. App.—Texarkana 1996, no writ) (step-grandmother had standing to file petition for managing conservator when she and child had been close since child's birth and child had resided with step-grandmother); *Hirczy v. Hirczy*, 838 S.W.2d 783, 786 (Tex. App.—Corpus Christi 1992, writ denied) (ex-husband of child's mother had standing when he had resided with child for three years in father role); *Rodarte v. Cox*, 828 S.W.2d 65, 69–70 (Tex. App.—Tyler 1991, writ denied) (foster parents had standing to intervene when child had resided with them for over two years); *see also In re J.W.M.*, 153 S.W.3d 541, 546–47 (Tex. App.—Amarillo 2004, no pet.) (issue of standing may have been waived and children had resided with foster parents for fifteen months).

Sharla saw the children only twice per year; and, although there was evidence of telephone calls, cards, and gifts, such interaction is too minimal under the circumstances of this case to create a fact issue concerning substantial contact. Even when viewed in a light most favorable to Sharla, the evidence shows as a matter of law that Sharla did not have substantial past contact with the

children.  *See C.M.C.*, 192 S.W.3d at 872.  Therefore, Sharla lacked standing to seek conservatorship, and we modify the judgment accordingly to clarify that she entirely lacked standing herein.

*(3)     The Trial Court Did Not Abuse Its Discretion in Denying Bill Woods' Requests to be Named Joint Managing Conservator and to Have Access to the Children*

The trial court held that awarding joint managing conservatorship to Bill Woods was "not in the best interest of the children" and that Bill failed to prove "that denial of possession of or access to the child[ren] would significantly impair the child[ren]'s physical health or emotion[al] well-being."  In the Woodses' final points of error, they contend that the trial court abused its discretion by denying Bill Woods' request for joint managing conservatorship of, and access to, the children.  We disagree.

There is a strong presumption that the best interest of a child is served if a natural parent is appointed as a managing conservator.  *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex. 1990); *De La Pena*, 999 S.W.2d at 527; *In re A.D.H.*, 979 S.W.2d 445, 447 (Tex. App.—Beaumont 1998, no pet.); *see also Brook v. Brook*, 881 S.W.2d 297, 299 (Tex. 1994).  Under Chapter 153 of the Texas Family Code:

> [U]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

11

TEX. FAM. CODE ANN. § 153.131(a) (Vernon 2008). Thus, in an original proceeding for a conservatorship determination, even "evidence that the nonparent would be a better custodian" is insufficient to support the appointment of a nonparent as managing conservator in preference to a parent. *See Lewelling*, 796 S.W.2d at 167. Rather, the nonparent is required to "affirmatively prove by a preponderance of the evidence that appointment of the parent as managing conservator would *significantly impair* the child, either physically or emotionally." *Id*.

Similarly, "[p]ossession of or access to a child by a grandparent is governed by the standards established by Chapter 153 [of the Texas Family Code]." *In re Chambless*, 257 S.W.3d 698, 700 (Tex. 2008) (quoting TEX. FAM. CODE ANN. § 102.004(c)). A grandparent seeking court-ordered visitation must "overcome[ ] the presumption that a parent acts in the best interest of the . . . child by proving by a preponderance of the evidence that denial of possession of or access . . . would significantly impair the child's physical health or emotional well-being." *Id.* (quoting TEX. FAM. CODE ANN. § 153.433(a)(2)). A trial court abuses its discretion when it grants access to a grandparent who has not met this standard. *In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007) (per curiam).

In this case, while there is conflicting testimony, there is ample evidence to support the judgment.[9] The children have not had substantial past contacts with the Woodses, seeing them only

---

[9]The trial court implicitly limited its evidentiary basis for the order denying relief to the evidence before it on or before October 12, 2007. However, the record on appeal contains, and both parties cite to, hearings and evidence produced after October 12, 2007. Whether we consider the entire record on appeal, or only that evidence explicitly relied on by the trial court, there is ample

a couple of times per year. Despite the allegations of drug use, the results of Shannon's hair-follicle drug test were negative. Larry Spangler, Chief Deputy of the Red River County Sheriff's Department, testified that he had known Jerry and Shannon for "ten or twelve years" and that, despite the Woodses' allegations, he had never seen anything to indicate Jerry was abusing Mary. Spangler's wife, Brenda, testified that Jerry had a "very good" relationship with the children, that the children were well taken care of, and that she had never "noticed anything about Jerry that was inappropriate with the children." Johnny Ray Hatcher, the children's maternal step-grandfather, having been around the children "quite a bit," testified that granting managing conservatorship to the Woodses would be detrimental to the children and that he had never seen anything in the children's actions to indicate they were neglected. Jerry's brother, James Coyel, lived on the Coyels' ranch and saw Jerry, Shannon, and the children practically "every day," but he never saw Jerry do anything inappropriate around the children. James Coyel characterized the children's relationship with their mother and stepfather as "normal." Mary wanted to stay with Jerry and Shannon, and Dan testified that he wanted to remain with Shannon because the thought of living with someone else badly scared him. It was undisputed that both children were excelling in their current school.

There is ample evidence supporting the trial court's refusal to grant Bill Woods conservatorship of or access to the children. We conclude that the trial court did not abuse its discretion in holding that Bill Woods failed to (1) prove that denying him access to the children

evidence to support the order denying relief, and therefore, in either event, the trial court did not abuse its discretion.

13

would significantly damage the children's well-being and (2) overcome the presumption that the Coyels would act in the children's best interests. *See* TEX. FAM. CODE ANN. § 153.433(a)(2) (Vernon Supp. 2009), § 153.131(a) (Vernon 2008); *Troxel v. Granville*, 530 U.S. 57, 67 (2000); *In re Mays-Hooper*, 189 S.W.3d 777, 778 (Tex. 2006) (per curiam); *J.P.C.*, 261 S.W.3d at 336. Accordingly, we overrule these points of error.

We modify the judgment of the trial court to reflect that Sharla Woods lacked standing entirely herein; we affirm the judgment as so modified.


Josh R. Morriss, III
Chief Justice


Date Submitted:     September 1, 2009
Date Decided:       October 23, 2009

14