ACCEPTED
06-14-00071-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
3/16/2015 3:13:27 PM
DEBBIE AUTREY
CLERK

# No. 06-14-00071-CV

IN THE COURT OF APPEALS FOR THE

SIXTH DISTRICT OF TEXAS

AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
3/16/2015 3:13:27 PM
DEBBIE AUTREY
Clerk

IN THE INTEREST OF A. B. O. and E. B. O., Children

---

Appeal from the County Court at Law
of Lamar County, Texas

---

## BRIEF OF APPELLEE

John R. Mercy
Texas State Bar No. 13947200
MERCY ✶ CARTER ✶ TIDWELL, L.L.P.
1724 Galleria Oaks Drive
Texarkana, TX  75503
Telephone:  (903) 794-9419
Facsimile:   (903) 794-1268
E-mail:  jmercy@texarkanalawyers.com

ATTORNEYS FOR APPELLEE

**Oral Argument Not Requested**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a) of the Texas Rules of Appellate Procedure, Appellee lists below the names and addresses of all parties to the trial court's final judgment together with their counsel in the trial court. This list is provided so that the justices of this Court may evaluate possible disqualification and recusal, and so that the Clerk of the Court of Appeals may notify all parties of this Court's final judgment.

David Brian O'Dell. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appellant

Brent M. Langdon
LANGDON ✵ DAVIS, LLP
5902 Summerfield, Ste. A
Texarkana, TX 75503. . . . . . . . . . . . . Trial and Appellate Counsel for Appellant

Lisa McPherson
LANGDON ✵ DAVIS, LLP
5902 Summerfield, Ste. A
Texarkana, TX 75503. . . . . . . . . . . . . . . . . . . Appellate Counsel for Appellant

Melanie McMurtry. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appellee

Chad Cable
CHAD CABLE LAW OFFICES
323 Gilmer Street
Sulphur Springs, TX 75482. . . . . . . . . . . . . . . . . . . . . . . Trial Counsel for Appellee

John R. Mercy
MERCY ✵ CARTER ✵ TIDWELL, L.L.P.
1724 Galleria Oaks Drive
Texarkana, TX 75503. . . . . . . . . . . . . . . . . . . . . . Appellate Counsel for Appellee

# TABLE OF CONTENTS

**Page**

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Response to Issues Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Argument and Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    Responsive Issue No. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    Responsive Issue No. 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    Responsive Issue No. 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    Responsive Issues 4 - 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        Caring for the Children.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        Maintaining Family Relationships. . . . . . . . . . . . . . . . . . . . . 22

        Parental Fitness.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    Responsive Issue No. 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    Responsive Issue No. 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

# INDEX OF AUTHORITIES

**Cases**:                                                                                          **Page**

BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789 (Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Butnaru v. Ford Motor Co.,
84 S.W.3d 198 (Tex.2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Dreyer v. Greene,
871 S.W.2d 697 (Tex.1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Gillespie v. Gillespie,
644 S.W.2d 449 (Tex.1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Golden Eagle Archery Inc. v. Jackson,
116 S.W.3 757 (Tex. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Hales v. Boyington Capital Group, Inc.,
411 S.W.3d 631 (Tex. App. – Dallas 2013, pet. denied). . . . . . . . . . . . . . . . . . . 28

Holley v. Adams,
544 S.W.2d 367 (Tex.1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Hoxie Implement Co., Inc. v. Baker,
65 S.W.3d 140 (Tex. App.– Amarillo 2001, pet. denied). . . . . . . . . . . . . . . . . . . 12

In re Vogel,
261 S.W.3d 917 (Tex. App. – Houston [14th] 2008, original proceeding). . . . 13, 16

In re A.B.P.,
291 S.W.3d 91 (Tex. App.– Dallas 2009, no pet.). . . . . . . . . . . . . . . . . . . . . . . . 24

In Re Dept. of Family & Protective Servs.,
273 S.W.3d 637 (Tex. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

iv

In Re Ferguson,
927 S.W.2d 766 (Tex. App. – Texarkana 1996, no writ). . . . . . . . . . . . . . . . . . . 24

In re H.M.B.,
No. 09-05-179-CV, 2006 WL 666015,
 (Tex. App.– Beaumont Mar.16, 2006, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re J.A.J.,
243 S.W.3d 611 (Tex.2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re J.R.D.,
169 S.W.3d 740 (Tex. App.– Austin 2005, pet. denied).. . . . . . . . . . . . . . . . . . . 20

In re M.M.M.,
307 S.W.3d 846 (Tex. App.– Fort Worth 2010, no pet.). . . . . . . . . . . . . . . . 19, 24

In re M.T.C.,
299 S.W.3d 474 (Tex. App.– Texarkana 2009, no pet.).. . . . . . . . . . . . . . . . . . . 20

In re Marriage of Woods,
2014 WL 4437795 (Tex. App.– Texarkana  2014).. . . . . . . . . . . . . . . . . . . . . . . 21

In re W.C.B.,
337 S.W.3d 510 (Tex. App.– Dallas 2011, no pet.). . . . . . . . . . . . . . . . . . . . . . . 19

In re W.M.,
172 S.W.3d 718 (Tex. App.– Fort Worth 2005, no pet.). . . . . . . . . . . . . . . . . . . 24

In the Interest of V.L.K.,
24 S.W.3d 338 (Tex. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

Low v. Henry,
221 S.W.3d 609 (Tex.2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Mauldin v. Clements,
428 S.W.3d 247 (Tex. App. – Houston [1st] 2014, no pet.). . . . . . . . . . . . . . 13, 16

McCall v. Hester,
2015 WL 575667 (Tex. App. – Texarkana, Feb. 12, 2015). . . . . . . . . . . . . . . . . 17

Morgan v. Morgan,
254 S.W.3d 485 (Tex. App.– Beaumont 2008, no pet.). . . . . . . . . . . . . . . . . . . . 12

Newell v. Newell,
349 S.W.3d 717 (Tex. App.– Fort Worth 2011, no pet.). . . . . . . . . . . . . . . . . . 24

Park v. Escalera Ranch Owners Association, Inc.,
2015 WL 737424 (Tex. App. – Austin, Feb. 13, 2015). . . . . . . . . . . . . . . . . . . . 20

Shook v. Gray,
381 S.W.3d 540 (Tex. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Svoboda v. Svoboda,
2009 WL 3151336 (Tex. App. – Austin 2009). . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tex. Dept. of Protective & Regulatory Servs. v. Sherry,
46 S.W.3d 857 (Tex.2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Rules**:

Tex. R. App. P.
    33.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    33.1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes**:

Texas Family Code
    §102.003. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    §102.003(a)(9) Tex. Fam. Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16
    §102.004(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16
    § 156.101 (West 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# No. 06-14-00071-CV

IN THE COURT OF APPEALS FOR THE

SIXTH DISTRICT OF TEXAS

AT TEXARKANA

IN THE INTEREST OF A. B. O. and E. B. O., Children

### BRIEF OF APPELLEE

TO THE HONORABLE COURT OF APPEALS:

COMES NOW Appellee, MELANIE McMURTRY, and files this her brief in response to the brief of Appellant, DAVID BRIAN O'DELL, and would show unto the Court the following[1].

### Statement of the Case

*Nature of the Case*

This is an appeal by the father of the children from the appointment of the maternal grandmother as joint managing conservator with the right to designate the primary residence of the children.

---

[1] Appellant, David Brian O'Dell, will be referred to as "O'Dell", and Appellee, Melanie McMurtry, will be referred to as "McMurtry." The children's mother, Alisa Jene O'Dell, who is not a party to this appeal, will be referred to as "Jene." The Clerk's Record will be cited as (CR p. __) and the Reporter's Record will be cited as (__ RR __).

*Trial Court*

The Honorable Bill Harris, County Court at Law, Lamar County, Texas.

*Trial*

Non-jury trial

*Course of the Proceedings*

Appellant, David Brian O'Dell, and Alisa Jene O'Dell were divorced in August of 2004. (CR 5). The decree designated both parents as joint managing conservators of the two children born of the marriage, A.B.O. and E.B.O., with Jene granted the exclusive right to designate the primary residence of the children. (CR 2, 11).

In November of 2012 Child Protective Services were made aware of and investigated concerns that Jene was using drugs. (3 RR 61). On December 3, 2012, McMurtry, the maternal grandmother of the children filed to modify that decree seeking to be the sole managing conservatorship of the children. (CR 51). CPS concerns were alleviated because O'Dell told them that the children normally lived with McMurtry and she had filed for custody. (3 RR 62). CPS did not file because it thought Jene's rights were going to be transferred to McMurtry. (3 RR 63).

In her petition, McMurtry alleged that continued appointment of the parents as joint managing conservators would not be in the best interest of the children because the appointment would significantly impair the children's physical health or

2

emotional development. (CR 52). In response, O'Dell filed a Motion to Deny Relief and an Original Answer. (CR 60, 62). O'Dell also filed a Counterpetition to Modify Parent-Child requesting that he be appointed the conservator with the right to designate the primary residence of the children. (CR 55). Both McMurtry and O'Dell agreed that Jene should not have custody and only have supervised visitation. (3 RR 55-56).

The trial court heard the Motion for Temporary Orders and appointed McMurtry and O'Dell as Joint Temporary Managing Conservators and Jene as Temporary Possessory Conservator of the children. (CR 81). The court also gave McMurtry the exclusive right to designate the primary residence of the children. (CR 81).

*Trial Court's Disposition of the Case*

On April 10, 2014, a final hearing was held after which the judge interviewed the children in chambers. (3 RR 339-423). The trial court appointed McMurtry and O'Dell as Joint Managing Conservators and gave McMurtry the right to designate the primary residence of the children in Lamar County. (CR 116). The court appointed Jene as Possessory Conservator of the children as supervised by McMurtry and ordered O'Dell to pay child support. (CR 116).

*Post-Trial*

The trial court entered Findings of Fact and Conclusions of Law. (CR 159). O'Dell filed a Request for Additional and Amended Findings of Fact and Conclusions of Law. (CR 162). The trial court granted O'Dell's request. (CR 169). O'Dell filed his Notice of Appeal. (CR 165).

## STATEMENT REGARDING ORAL ARGUMENT

Appellant has not requested oral argument.  Appellee agrees that oral argument would not be of benefit to the Court in deciding the issues.

## RESPONSE TO ISSUES PRESENTED

### Responsive Issue No. 1

**O'Dell was afforded his constitutional due process rights**.

### Responsive Issue No. 2

**McMurtry had standing to obtain modification of the prior order.**

### Responsive Issue No. 3

**The parental presumption did not apply because this was a modification. But even if it did McMurtry showed that the denial of access to the children would significantly impair the children's health and emotional well-being.**

### Responsive Issues No. 4 - 7

**The trial court did not abuse its discretion in appointing O'Dell and McMurtry as joint managing conservators. The modification was in the best interest of the children.**

### Responsive Issue No. 8

**The trial court did not abuse its discretion by making findings of fact that were based on sufficient evidence and reasonable.**

### Responsive Issue No. 9

**The court's findings were supported by the evidence and did not constitute an abuse of discretion. The conclusions of law based on the findings were proper.**

Although there was no order in place McMurtry raised the children after their parents divorced. (3 RR 24, 29, 62, 80, 105, 355, 399). During that time Jene acquired a drug habit. (3 RR 61). O'Dell worked several jobs and only interacted with the children on his visitation weekends. (3 RR 153, 179 180). In the fall of 2012 Jene was reported to CPS for her drug use. (3 RR 61). CPS began an investigation which validated Jene's drug usage. (3 RR 44 61). The investigation was not completed because McMurtry agreed to continue raising the children, and supervise any visitation which Jene got. (3 RR 62-63). O'Dell did not object to this arrangement. (3 RR 68, 84).

After McMurtry filed to intervene O'Dell contested it. (CR 55, 60, 62). One thing that the parties agreed on was that Jene should not have unsupervised visitation. (3 RR 56). After a hearing on temporary orders, McMurtry was appointed as a joint temporary managing conservator with O'Dell and given the right to designate their primary residence. (CR 64).Only after this point did O'Dell begin to attempt to participate in the children's lives other than on his weekends of visitation. (3 RR 108, 199, 362, 410).Although he had not done so before, O'Dell began to attend extracurricular activities. (3 RR 362, 410). But despite this new found interest visitation periods did not change. As described by the children, he would pick them

up and they would either spend the weekend in their rooms while he and his common-law wife watched tv, go to her sister's house where the adults would drink, or he would attempt to take the children hunting, an activity that neither one liked. (3 RR 347, 361, 395-397, 411-416, 418). It is little wonder that the counselors who testified found very little bonding between the children and O'Dell. (3 RR 22, 113). The children even recognized the lack of any relationship and adamantly requested the court to not send them to live with O'Dell. (3 RR 25, 357, 407).

McMurtry provided the children with a safe, loving relationship that had been established over the many years the children had lived with her. (3 RR 24, 105, 214-218). McMurtry had been the person involved in the children's education, listing her address as their residence, being in contact with counselors, and insisting on appropriate education modifications for the children. (3 RR 214-216, 220-221). Additionally, McMurtry had provided most of the children's clothing, and all of their school supplies. (3 RR 357). She also was responsible for getting the children to school on a regular basis, ensuring their participation in extracurricular activities, and encouraging their love of rodeo. (3 RR 214-216, 220-221, 224).

When faced with deciding whether O'Dell or McMurtry should determine the children's primary residence the court decided to leave them with McMurtry, where they had been living most of their lives. Further, the court decided to maintain the

visitation schedule for O'Dell that he had prior to the CPS investigation. It is from this order that O'Dell appeals.

O'Dell raises for the first time a constitutional challenge that was not asserted in the trial court. O'Dell claims that he was not afforded his constitutional rights because the court did not superimpose the parental presumption over the requirements for standing. This issue was waived by not asserting it at the trial court. But even if it had been asserted, the Texas Supreme Court has said that standing is separate from and does not rely on the parental presumption.

O'Dell challenges McMurtry's standing. McMurtry proved standing under both § 102.003(a)(9) and § 102.004(a)(1) of the Texas Family Code.

O'Dell challenges whether McMurtry overcame the parental presumption. Texas courts have held that the parental presumption does not apply in a modification. But even if it did, the trial court has sufficient evidence to support its finding that the children's emotional well-being would be significantly impaired if McMurtry was denied possession of them.

O'Dell challenges whether the court's conclusions of law were an abuse of discretion and not in the best interest of the children. In analyzing whether or not there was sufficient evidence for the court to make its decision, and whether its decision was reasonable, the court clearly did not abuse its discretion based upon the evidence presented, and its interviews with the children.

O'Dell attacks the legal and factual sufficiency of the evidence to support some of the court's findings of fact. O'Dell attacks findings that he requested as well as ones that he didn't. In reviewing the evidentiary basis for findings of fact this Court does so as part of the abuse of discretion review. It is clear based upon the evidence presented at the hearing the interviews with the children that the findings of fact had sufficient evidentiary support.

## ARGUMENT AND AUTHORITIES

## Responsive Issue No. 1

**O'Dell was afforded his constitutional due process rights**.

O'Dell raises a claim of violation of his constitutional rights in the manner in which the trial court decided the case. No constitutional argument was raised in the trial court.[2] To preserve a complaint for appellate review, a party must present the complaint to the trial court by a timely request, objection, or motion, state the grounds for the desired ruling, and obtain a ruling thereon. Tex. R. App. P. 33.1(a). "This requirement applies to constitutional claims, including constitutional claims in family-law cases." Morgan v. Morgan, 254 S.W.3d 485, 490 n. 1 (Tex. App.– Beaumont 2008, no pet.) (citing Tex. Dept. of Protective & Regulatory Servs. v. Sherry, 46 S.W.3d 857, 861 (Tex.2001); Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex.1993)). "[B]oth the objection and all legal basis for it must be timely asserted." Hoxie Implement Co., Inc. v. Baker, 65 S.W.3d 140, 145 (Tex. App.– Amarillo 2001, pet. denied).

---

[2] The closest that O'Dell came to raising it was in argument to the court that the Troxel* case from the U.S. Supreme Court required that the parental presumption apply. (3 RR 327).
* Troxel v. Granville, 120 S.Ct. 2054; 147 L.Ed.2d 49 (2000).

In the event that the court is going to consider the argument, O'Dell's argument appears to be derived from an unpublished decision from the Austin Court of Appeals. Svoboda v. Svoboda, 2009 WL 3151336 (Tex. App. – Austin 2009). The crux of O'Dell's argument seems to be that if a grandparent does not overcome the parental presumption to prove standing that it constitutes a violation of the parent's constitutional rights.  (Appellant's Brief p. 25-27).

The Texas Supreme Court has addressed the relationship between the parental presumption and standing.  Shook v. Gray, 381 S.W.3d 540 (Tex. 2012). The court determined that standing is determined without reliance on the parental presumption. *Id.* at p. 543.  Therefore O'Dell's constitutional claim should fail.

If O'Dell's claim is that the presumption should be applied to this modification proceeding, it too fails. This case is a modification of the court's original order in the divorce. As a modification proceeding it falls under Chapter 156 of the Family Code. The parental presumption arises under § 153.433.  Texas courts have repeatedly held that the parental presumption only applies in original proceedings.  In the Interest of V.L.K., 24 S.W.3d 338, 342 (Tex. 2000); In re Vogel, 261 S.W.3d 917, 923 (Tex. App. – Houston [14th] 2008, original proceeding); Mauldin v. Clements, 428 S.W.3d 247, 267 (Tex. App. – Houston [1st] 2014, no pet.).  Therefore because this is a modification under Chapter 156 the parental presumption does not apply.

O'Dell's constitutional challenge fails because it was waived or the parental presumption does not affect standing. O'Dell's first issue should be overruled.

## Responsive Issue No. 2

**McMurtry had standing to obtain modification of the prior order.**

There are two ways to establish standing under the Texas Family Code. First, suit may be brought by "a person other than a foster parent, who has had actual care, control and possession of the child for at least six months ending not more than ninety days preceding the date of the filing of the petition." §102.003(a)(9) Tex. Fam. Code. Second, in addition to the general standing under §102.003 a grandparent may bring an action if there is satisfactory proof to the court that "the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development." § 102.004(a)(1). McMurtry only had to prove standing under one section but she met the requirements under both §102.003(a)(9) and § 102.004(a)(1).

Section 102.003(a)(9) requires six months actual care, control and possession of the children prior to the filing of the suit. It is undisputed that the petition was filed on December 3, 2012. (CR 51). McMurtry testified that the children had lived with her continuously from April 7, 2012 up until the time the suit was filed. (3 RR 208). O'Dell testified that he knew that between March 2012 and the trial they were

14

living with McMurtry. (3 RR 149). O'Dell's common-law wife testified that the children moved in with McMurtry in March of 2012. (3 RR 273). O'Dell does not challenge McMurtry's standing on this basis. This evidence is sufficient to establish standing under §102.003.

In the event the Court wishes to further analyze standing, McMurtry also proved her standing under §102.004(a)(1). She was required to show that the children's present circumstances would significantly impair the children's physical health or emotional development. §102.004(a)(1). The children's present circumstances were that the mother, Jene, was a joint managing conservator with the right to establish the primary residency. Both O'Dell and McMurtry agreed that Jene was unfit to hold that position and that a continuation of the circumstance would significantly impair the children's physical health and emotional development. (3 RR 55-56). Both O'Dell and McMurtry agreed that Jene should not be allowed visitation unless it was supervised. (3 RR 55-56). These admissions and evidence that the present circumstances would significantly impair the children's emotional development is sufficient to support McMurtry's standing under § 102.004(a)(1).

If O'Dell's argument is an attempt to somehow engraft the parental presumption into the standing requirements, the Supreme Court has specifically held that this is not proper. Shook, 381 S.W.3d at 543.

O'Dell's standing challenge fails because McMurtry established standing under § 102.003(a)(9) or § 102.004(a)(1). O'Dell's second issue should be overruled.

## Responsive Issue No. 3

**The parental presumption did not apply because this was a modification. But even if it did McMurtry showed that the denial of access to the children would significantly impair the children's health and emotional well-being.**

As set forth above, the parental presumption does not apply in a modification. *See* V.L.K., 24 S.W.3d at 342, Vogel, 261 S.W.3d at 923, and Mauldin, 428 S.W.3d at 267. Therefore, issue number three should be overruled.

In the event that the Court chooses to look beyond this controlling precedent and require a party to overcome the parental presumption in a modification, McMurtry still did so.

A grandparent may be granted possession of a grandchild if they prove: (1) at the time the relief is requested at least one parent's rights have not been terminated; (2) that the denial of possession of or access to the child would significantly impair the child's physical health and emotional well-being; and (3) that the grandparent is the parent of a parent of the child and that parent of the child: (A) has been incarcerated; (B) has been found by the court to be incompetent; (C) is dead; or (D)

does not have actual or court ordered possession of the child. Sec. 153.33 Tex. Fam. Code.

Here it appears that O'Dell concedes that neither parent's rights have been terminated. (CR 57). Additionally, the evidence is clear that the children's mother does not have actual possession of the children. (3 RR 24, 62, 80, 105, 149, 273). Therefore, McMurtry has met two of the three prongs. The focus of O'Dell's argument appears to be on the second factor, that denial of possession of the children to McMurtry would significantly impair the children's physical and emotional well-being. (Appellant's brief p. 32-37).[3]

The trial court is the sole judge of the credibility of the witnesses and the weight to be given to the evidence. Golden Eagle Archery Inc. v. Jackson, 116 S.W.3 757, 761 (Tex. 2003); McCall v. Hester, 2015 WL 575667 (Tex. App. – Texarkana, Feb. 12, 2015). In making the determination that denial of possession by McMurtry would significantly impair the children's health and emotional well-being, the court heard testimony from a licensed professional counselor, McMurtry, and the children themselves.

The licensed professional counselor, Ronikaye Rusak, testified that McMurtry had always been the children's stability from their earliest memory. (3 RR 24). She

---

[3] O'Dell's argument focuses on whether or not he would deny McMurtry access to the children. (Appellant's brief p. 34-36). This is a misreading of the statute.

testified that the children were scared that O'Dell would take them and not let them see McMurtry. (3 RR 22, 26). She testified that the children were happy and well adjusted with McMurtry. (3 RR 29). Rusak testified that if the children were taken from McMurtry and sent to live with O'Dell that it would cause the children emotional distress and harm. (3 RR 53).

McMurtry testified that the children have expressed to her that they don't want to live with O'Dell. (3 RR 210). She also testified that taking them from her and sending them to live with O'Dell would cause emotional harm. (3 RR 210).

The children were interviewed by the court. A.B.O. told the court she was scared to go with her dad. (3 RR 344). She wants to live with mcMurtry because she is her "go to" person. (3 RR 357). If she had to live with O'Dell she would be "sad." (3 RR 358). E.O.B. told the court she wants to live with McMurtry because she is a "better mom than her actual mom." (3 RR 407). She is able to talk to McMurtry about things she can't talk to anyone else about. (3 RR 409). She feel comfortable with McMurtry. (3 RR 417). If she had to live with O'Dell she would be "uncomfortable, nervous, mad, scared and sad." (3 RR 418). The court also heard testimony from O'Dell and his witnesses.

It is clear that the court as the fact finder believed Rusak, McMurtry, and the children. In this case that evidence clearly supports a finding that the children would

18

have their emotional well-being significantly impaired if McMurtry was denied possession of them. O'Dell's Issue No. 3 should be overruled.

**Responsive Issues No. 4 - 7**

**The trial court did not abuse its discretion in appointing O'Dell and McMurtry as joint managing conservators. The modification was in the best interest of the children.**

O'Dell challenges the trial court's conclusions of law 4 through 7 against the backdrop of the children's best interest pursuant to § 156.101.

This Court is to review conservatorship determinations for an abuse of discretion. In re J.A.J., 243 S.W.3d 611, 616 (Tex.2007); In re W.C.B., 337 S.W.3d 510, 513 (Tex. App.– Dallas 2011, no pet.). "The trial court is given wide latitude in determining the best interests of a minor child." Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex.1982); In re H.M.B., No. 09-05-179-CV, 2006 WL 666015, at *2 (Tex. App.– Beaumont Mar.16, 2006, no pet.) (mem. op .). In determining if the trial court abused its discretion, this court must decide whether the trial court acted without reference to any guiding rules or principles, *i.e.* that the trial court's decision was arbitrary and unreasonable. Low v. Henry, 221 S.W.3d 609, 614 (Tex.2007). The trial court does not abuse its discretion when it bases its decision on conflicting evidence. In re M.M.M., 307 S.W.3d 846, 849 (Tex. App.– Fort Worth 2010, no pet.). So long as there is some evidence of substantive and probative character to support

the trial court's decision, this court will not find an abuse of discretion. Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex.2002).

The court's conclusions of law are reviewed de novo. BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); Park v. Escalera Ranch Owners Association, Inc., 2015 WL 737424 (Tex. App. – Austin, Feb. 13, 2015).

In performing a review, this Court should defer to the trial court, because "[t]he trial court is in a better position to determine what will be in the best interest of the child since it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent." In re J.R.D., 169 S.W.3d 740, 743 (Tex. App.– Austin 2005, pet. denied).

The primary consideration in determining issues regarding conservatorship, access, and possession is always the best interest of the child. Tex. Fam. Code Ann. § 156.101 (West 2014); In re M.T.C., 299 S.W.3d 474, 479 (Tex. App.– Texarkana 2009, no pet.). Texas courts have long recognized certain (non-exclusive) factors to be considered in determining the best interest of a child:

(A) the desires of the child;

(B) the emotional and physical needs of the child now and in the future;

(C) the emotional and physical danger to the child now and in the future;

20

(D)     the parental abilities of the individuals seeking custody;

(E)     the programs available to assist these individuals to promote the best interest of the child;

(F)     the plans for the child by these individuals or by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

Holley v. Adams, 544 S.W.2d 367, 372 (Tex.1976).  See also In re Marriage of Woods, 2014 WL 4437795 (Tex. App.– Texarkana  2014).

According to O'Dell, the Holley v. Adams factors fall roughly into three categories: (1) caring for the children; (2) maintaining family relationships; and (3) parental fitness.  (Appellant's brief p. 38).  In applying the Holley v. Adams criteria as urged by O'Dell it becomes even further clear that the court's decision was in the best interest of the children.

**Caring for the Children**

In analyzing O'Dell's caring for the children factor, there was substantial testimony with regard to McMurtry's actual care for the children. McMurtry has been their primary caregiver throughout their life.  (3 RR 24). She is the one who would "rescue" the children from their mother and her boyfriends.  (3 RR 200). Further, she

21

is the one that insisted and made sure that they attended school. (3 RR 218-222). McMurtry took them for testing to determine their academic abilities. (3 RR 240). McMurtry also is in contact with the school counselor and school officials to make sure that the children receive their education. (3RR 220). McMurtry also provides most of the children's clothing, food and shelter. (3 RR 224). Additionally, McMurtry makes sure that the children are involved in their school activities and rodeo. McMurtry's address is listed for the children on all school records. (3 RR 217). In essence, McMurtry is the children's "go to" person and provides the only stability for the children. (3 RR 218, 357).

**Maintaining Family Relationships**

In analyzing O'Dell's second factor, of maintaining family relationships, the court once again had substantial evidence upon which to make its decision. The evidence was that McMurtry had always been the one that O'Dell relied upon to ensure visitation when Jene would "blow up." (3 RR 234). McMurtry had worked well with O'Dell prior to the modification being filed. (3 RR 163). McMurtry would take the children to visitation with O'Dell, and encourage them to have a relationship with their father. (3 RR 255, 309). The evidence was clear that McMurtry was dedicated to making sure that the children continued to have a relationship with their

father. (3 RR 218).  McMurtry also attempted to continue the children in counseling so that they could build a better bond with their father. (3 RR 228).

**Parental Fitness**

Finally, analyzing O'Dell's third factor of parental fitness, it becomes obvious that McMurtry is fit to be a joint managing conservator with the right to establish primary residency.  McMurtry has been the one that has raised the children throughout their life.  (3 RR 24, 62, 80, 105).  She has been more of a mother to the children than their own mother. (3 RR 201-203, 212-218, 407).  She is the one that talks to them about all important things. (3 RR 357, 409, 417 ).  McMurtry performs all the tasks necessary as a parent, including providing clothing, food, shelter, taxi service, and encouragement.  (3 RR 212-218, 220-224, 357, 377, 409). Therefore the trial court did not abuse its discretion.

**Responsive Issue No. 8**

**The trial court did not abuse its discretion by making findings of fact that were based on sufficient evidence and reasonable.**

Under Issue No. 8 O'Dell attempts to attack the legal and factual sufficiency of the evidence to support some of the court's findings of fact.  As this Court has previously held, the legal or factual sufficiency of the evidence to support findings is not a separate independent review but part and parcel to the abuse of discretion

review that this Court makes. In Re Ferguson, 927 S.W.2d 766, 769 (Tex. App. – Texarkana 1996, no writ). Other courts agree that in determining whether a trial court abused its discretion in its child custody ruling, this court does not consider legal and factual sufficiency as independent grounds of error but as relevant factors in deciding whether the trial court abused its discretion. Newell v. Newell, 349 S.W.3d 717, 720 (Tex. App.– Fort Worth 2011, no pet.); In re A.B.P., 291 S.W.3d 91, 95 (Tex. App.– Dallas 2009, no pet.). In this regard, the consideration is whether the trial court had sufficient information to exercise its discretion and whether it erred in its application of that discretion. M.M.M., 307 S.W.3d at 849. The traditional sufficiency review is relevant with regard to determining if the trial court had sufficient evidence to exercise its discretion. Id. (citing In re W.M., 172 S.W.3d 718, 725 (Tex. App.– Fort Worth 2005, no pet.)). If it did then the inquiry is whether the trial court made a reasonable decision considering the evidence presented. M.M.M., 307 S.W.3d at 849. In doing the two-step analysis it becomes clear that there was sufficient evidence for the court to make a decision and that the court's decision based upon that evidence was reasonable.

O'Dell has set forth in his brief the facts favorable to his position, without completely reviewing the facts unfavorable to that position. In an attempt to provide

24

this Court with the full picture McMurtry will detail the facts that support each of the court's challenged findings.

### Finding No. 2

**Finding 2. That McMurtry had actual exclusive care, control and possession of the subject children for more than six months prior to filing her intervention.**

**Finding 2. That McMurtry has effectively been the primary caretaker of the subject children for most of their lives.**

The court found that McMurtry had actual exclusive care, control and possession of the subject children for more than six months prior to her filing the intervention. (CR 159). The court further found that McMurtry has effectively been the primary caretaker of the children for most of their lives. (CR 159). These findings are based upon testimony from Ronikaye Rusak, Sara Estrada, Kathy Floyd, O'Dell, McMurtry, Tonya Tackett, and the children. McMurtry testified that the children had lived with her continually from April 7, 2012 until the suit was filed. It is undisputed that the suit was filed on December 3, 2012.

Rusak testified that based upon her interviewing the children and the information provided to her, that the children had lived most of their lives with Ms. McMurtry, (3 RR 24). She also testified that McMurtry was the children's primary caretaker. (3 RR 24).

25

Sara Estrada, the CPS investigator, testified that O'Dell told her that the children were normally with McMurtry. (3 RR 62, 80).

Kathy Floyd, a licensed professional counselor appointed by the court, testified that the children had lived with McMurtry most of their lives. (3 RR 105).

O'Dell testified that he knew the children were living with McMurtry after March of 2012. (3 RR 149). He also testified that his interest in the children picked up because McMurtry filed the modification. (3 RR 188).

McMurtry testified that the children had lived with her continually since April 7, 2012 until the suit was filed on December 3, 2012. (3 RR 2018). McMurtry also detailed what she does for the children, including exchanging them for visitation with O'Dell, providing a residence so they could go to Chism ISD, checking with the school on grades and testing, buying most of their clothes, taking them to extra-curricular activities and rodeos, and providing stability to the children. (3 RR 217, 218, 220, 224).

Tackett, O'Dell's common-law wife, testified that she and O'Dell knew that the children were living with McMurtry at least since March 2012. (3 RR 273).

When A.B.O. was interviewed by the court she discussed living with McMurtry most of the time. (3 RR 356-57). She also detailed her relationship with McMurtry. (3 RR 357, 377).

E.B.O. likewise testified that they lived with McMurtry but visited with their mother.  (3 RR 399).

This evidence is sufficient for the trial court to make both findings.  The trial court did not abuse its discretion in making these findings.

## Finding No. 4

**Finding 4.  That the subject children have little bond with their father, O'Dell.**

O'Dell contests the court's finding of fact that the children had little bond with their father.  This finding is based upon the testimony of the two licensed professional counselors as well as the children's interviews with the court.  Rusak testified that the children's trust in O'Dell was low.  She further testified that their isn't a bond between the children and O'Dell.  (3 RR 47).  Additionally, Kathy Floyd, a licensed professional counselor, also testified that one big issue was the distance between the children and their father.  She additionally testified that the children felt that their dad would take them away from their grandmother. (3 RR 113-114).  When asked to rate their relationship with their dad the children rated it at a 3 on a scale of 1 to 10. (3 RR 25). When interviewed by the court the children reported that upon visits with their dad he would watch TV and they would stay in their room.  The children told the court of their minimal interaction with O'Dell.

This evidence is sufficient for the trial court to make the finding. The trial court did not abuse its discretion in making the finding.

**Finding Nos. 5 and 6**

> **Finding 5.  That McMurtry executed and attached an affidavit on knowledge and belief that contained, along with supporting facts, the allegation that denial of possession of or access to the children would significantly impair the children's physical health or emotional well-being.**

> **Finding 6.  That the facts stated in the affidavit were true and were sufficient to support the relief requested.**

O'Dell complains about the verification of McMurtry's pleadings for the first time on appeal. O'Dell did not complaint to the trial court that the verification was not a sufficient affidavit. The failure to complain to the trial court at a time that it could rule on this constitutes a waiver of these issues on appeal. *See* Tex. R. App. P. 33.1.

Further, O'Dell requested these specific findings. (CR 152). Under the doctrine of invited error, O'Dell cannot now complaint about the inclusion of findings that he specifically requested. In Re Dept. of Family & Protective Servs., 273 S.W.3d 637, 649 (Tex. 2009). Hales v. Boyington Capital Group, Inc., 411 S.W.3d 631, 637 (Tex. App. – Dallas 2013, pet. denied).

28

O'Dell waived this error or invited the error. O'Dell's challenge to these findings should be denied.

## Finding No. 7

**Finding 7. That naming O'Dell as the conservator with the exclusive right to determine the primary residence of the subject children would significantly impair the children's health or emotional development.**

O'Dell challenges the court's finding that allowing him to determine the primary residence would significantly impair the children's health and emotional development. This finding is supported by evidence from Ronikaye Rusak, McMurtry, and the children. Rusak testified that if the children were sent to live with O'Dell that it would cause the children emotional distress and harm. (3 RR 53). She also testified that O'Dell's drinking was a problem. (3 RR 22). McMurtry testified that sending the children to live with O'Dell would cause emotional harm. (3 RR 210). But most telling was the children's testimony about how O'Dell behaved and treated them during his visitations. During the court's interview of A.B.O. she related how she was scared of going to O'Dell's house if he didn't win the hearing. (3 RR 444). She also related that he would drink around the children and "go crazy." (3 RR 346). She testified that O'Dell was not involved with her school activities, except one open house, before the case was filed. (3 RR 362). She also testified that O'Dell didn't support them in their favor activity, rodeo. (3 RR 363).

29

When E.B.O. was interviewed she told of similar problems.  She also testified that O'Dell's common-law wife would have to drive them home when O'Dell drank.  (3 RR 395).  But she said that Tonya had also been drinking.  (3 RR 395).  She testified that she "hates" hunting but he still makes her go.  (3 RR 418).

The evidence was sufficient to support this finding.  The trial court did not abuse its discretion in making the finding.

### Finding No. 8

**Finding 8.  O'Dell submitted the finding that O'Dell intends to completely deny McMurtry possession of or access to the children and now claims it is error to have entered it.**

O'Dell challenges the court's finding that he intended to deny McMurtry possession of the children. This was another finding that O'Dell requested but now challenges. (See argument at p. 22). The court's finding is supported by the evidence from Rusak that the children feared that they would not be allowed to see their grandmother.  (3 RR 26).  This fear seems to be based upon an incident at Thanksgiving when O'Dell threatened that very thing. (3 RR 36, 342-43).  Further, Floyd also testified that the children felt that their dad would take them away from their grandmother. (3 RR 114).  A.B.O. testified she is scared O'Dell will not let her see McMurtry.  (3 RR 370).  At Thanksgiving O'Dell threatened to not return E.B.O.

to McMurtry.  (3 RR 3342-43).  E.B.O. also testified that she was scared O'Dell would not return her to McMurtry.  (3 RR 392-94).

> **Additional Finding: That McMurtry is a parent of a parent of the children and that a parent of the children has been incarcerated in jail or prison during the three-month period preceding the filing of the petition; found by a court to be incompetent; is dead; or does not have actual or court-ordered possession of or access to the children.**

After the court had entered findings of fact and conclusions of law O'Dell requested additional findings. (CR 162).  The court granted that request.  (CR 163).  O'Dell now complains of the entry of that finding.  In the one paragraph challenge O'Dell fails to recognize that the finding is in the disjunctive.  Evidence supporting one of the four propositions will support the finding.  The court heard significant evidence that Jene did not have actual possession of the children.  (See facts outlined in pages 8 to 9).

The evidence was sufficient to support this finding.  The trial court did not abuse its discretion in making the finding.

## Responsive Issue No. 9

**The court's findings were supported by the evidence and did not constitute an abuse of discretion. The conclusions of law based on the findings were proper.**

O'Dell makes a global complaint that the judgment is flawed because the findings were not supported by evidence. As set out above, the findings have sufficient evidence for the court to make its decision and the decision was reasonable.

It is clear from an analysis of the evidence that there was sufficient evidence for the court to make its determination as to the children's best interests, and that based upon that evidence the court's determination was reasonable.

## CONCLUSION

Based upon the entire record, including the interviews with the children, the court made its decision based on the best interest of the children. The evidence is sufficient to support the court's decision and the decision was reasonable. Therefore the trial court did not abuse its discretion and should be affirmed.

WHEREFORE, PREMISES CONSIDERED, Appellee, MELANIE McMURTRY, prays that this Court affirm the trial court's judgment; and for such other and further relief to which she may show herself to be entitled.

Respectfully submitted,

/s/ *John R. Mercy*

John R. Mercy
Texas State Bar No. 13947200
MERCY ✶ CARTER ✶ TIDWELL, L.L.P.
1724 Galleria Oaks Drive
Texarkana, TX  75503
Telephone:  (903) 794-9419
Facsimile:   (903) 794-1268
E-mail:  jmercy@texarkanalawyers.com

ATTORNEYS FOR APPELLEE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of Appellee was served on all counsel of record via electronic transmission on this 16th  day of March, 2015, as follows:

Mr. Brent M. Langdon                         *Email: blangdon@ldatty.com*
Ms. Lisa McPherson                           *Email: lisam@ldatty.com*
LANGDON ✶ DAVIS, LLP
5902 Summerfield, Ste. A
Texarkana, TX 75503

Mr. Chad Cable                               *Email: chadcable@yahoo.com*
CHAD CABLE LAW OFFICES
323 Gilmer Street
Sulphur Springs, TX 75482

/s/ *John R. Mercy*
John R. Mercy

33

**CERTIFICATE OF COMPLIANCE**

Pursuant to Tex. R. App. P. 9.4, I hereby certify that the foregoing Brief of Appellee contains 5512 words. This is a computer-generated document created in WordPerfect using 14-point typeface. In making this certificate I am relying on the word count provided by the software used to prepare the document.

*/s/ John R. Mercy*

John R. Mercy